UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
AZURITY PHARMACEUTICALS, INC.
                PLAINTIFF

    Vs.                                    CIVIL NO.
                                           21-8717 (GC)
AMNEAL PHARMACEUTICALS, LLC,
                DEFENDANT
_____


**JUNE 8, 2022**
CLARKSON S. FISHER COURTHOUSE
402 EAST STATE STREET
TRENTON, NEW JERSEY   08608


B E F O R E:        THE HONORABLE GEORGETTE CASTNER
                    U.S. DISTRICT COURT JUDGE
                    DISTRICT OF NEW JERSEY




**MARKMAN HEARING**




FRANCIS J. GABLE, C.C.R., C.R.R.
OFFICIAL U.S. REPORTER
(856) 889-4761

*United States District Court*
*Trenton, New Jersey*

A P P E A R A N C E S:


    SAIBER, LLC
    BY:   ARNOLD B. CALMANN, ESQUIRE
         KATHERINE A. ESCANLAR, ESQUIRE
    FOR THE PLAINTIFF


    WILSON, SONSINI, GOODRICH & ROSATI
    BY:   KRISTINA M. HANSON, ESQUIRE
    FOR THE PLAINTIFF


    STONE CONROY, LLC
    BY:   REBEKAH R. CONROY, ESQUIRE
    FOR THE DEFENDANT


    PROCOPIO, CORY, HARGREAVES & SAVITCH, LLP
    BY:   STEVEN MADDOX, ESQUIRE
         JEREMY J. EDWARDS, ESQUIRE
    FOR THE DEFENDANT

*United States District Court*
*Trenton, New Jersey*

THE COURT:  Good morning, counsel.  We are here on Azurity Pharmaceuticals, Inc. versus Amneal Pharmaceuticals, LLC, Docket 21-cv-8717.  Counsel, can you enter your appearances for the record, beginning with plaintiff?

MR. CALMANN:  Good morning, your Honor, Arnie Calmann for plaintiff Azurity.  To my left is my colleague Katherine Escanlar, and my co-counsel will identify herself.

MS. HANSON:  Kristina Hanson from Wilson Sonsini.  Good morning.

THE COURT:  Good morning.

MS. CONROY:  Good morning, your Honor, on behalf of defendant Amneal, Rebekah Conroy from Stone Conroy.

MR. MADDOX:  And Steven Maddox and Jeremy Edwards from the Procopio firm.

THE COURT:  Last time we spoke, we scheduled this for a *Markman* hearing today.  As I understand each side will have 30 minutes to do a presentation.  I've read all the briefs, and I have a copy of one of the power point presentations, but I understand those will be displayed up on the screen here today as well.  Correct?

MS. HANSON:  Yes, your Honor.

THE COURT:  Good, we're off and running.  And I will be here to listen, and if it's okay with you I may have some questions along the way.

MS. HANSON:  That's great.

*United States District Court*
*Trenton, New Jersey*

THE COURT:  We will begin with plaintiffs.

MS. HANSON:  Thank you, your Honor.

Good morning, your Honor, and thank you for hosting us today.  If it's okay with you and your staff, are you comfortable with me removing my mask?

THE COURT:  I am.

MS. HANSON:  Thank you.

So I understand that the Court is most interested today in the dispute regarding claim construction.  However, to the extent that opposing counsel uses his time to address that pending motion to strike the expert report, I would ask that your Honor allow me some time at the end to respond.

And I would also note that to the extent that your Honor believes that these claims can be construed on the intrinsic evidence alone, we agree that that motion would be moot.

So just to orient us today, there are four patents-in-suit in this litigation.  On the left you see three patents here, the '329, the '039 and the '998.  These are all related patents and they claim the pharmaceutical formulation and methods of treatment using that pharmaceutical formulation.

The parties are here today solely to talk about one disputed claim term from the '453 patent which is the patent on the right, and is unrelated to the other three

patents-in-suit.

So this is claim one of that '453 patent. As you see it's a product-by-process patent. It claims a pharmaceutical suspension. Here it is made up of particles that are amlodipine besylate of a certain median diameter. That is made by a process described in the patent, and it includes these three steps shown here; the providing step, the adding step, and the subjecting to the ultrasound agitation.

Essentially we're --

THE COURT: Counsel, you may have to go slow for me.

MS. HANSON: Okay, I apologize.

THE COURT: Amlodipine?

MS. HANSON: Amlodipine

THE COURT: Thank you.

MS. HANSON: Essentially we are adding two components and mixing them in the way described in the claim. Where the dispute arises and you see in the blue box on that previous slide, is in the order regarding these three steps; the providing, the adding and subjecting step.

Now, it is Azurity's contention that the claim does require performing each one of these steps, but that they do not always need to be performed in the order in which they appear in the claim. For instance, you don't always have to add the amlodipine besylate first and always first; and you don't always have to add the sodium benzoate second and always

second; and that the subjecting the ultrasonic agitation step can begin before either of these components are added into the mixture.

Amneal, on the other hand, contends that each step must be performed exactly in the order as they are written in the claim and in no other way.

So the default understanding in the case law is that as a general rule the claim is not limited to the performance of the steps in the order recited, unless there's something that explicitly or implicitly requires this.  And the Federal Circuit has set up this two-part test, and it's found in a number of cases that both parties cited as I'm sure your Honor saw.

One part of this test looks to the claim language itself --

THE COURT:  I'm sorry; are you referring to a specific case?

MS. HANSON:  I'm referring to the *Altiris* case which is the one that is shown on the slide.

THE COURT:  Got it.

MS. HANSON:  One part of this test looks to the claim language to determine if, as a matter of logic or grammar, the steps must be performed in the order that they are written.

The other part of this test looks to the rest of the

specification or other intrinsic evidence, for example the prosecution history, to determine whether something in a specification or prosecution history directly or implicitly requires such an narrow construction.

Now, it's set up this way because to require the steps to be performed in the order in which they are written in the claim is thought as a narrowing construction.

Amneal in its brief highlights the first step and contends that if the language in the claim suggests an order, as they argue it does here, this is dispositive in it of itself, and that the Court need not look to the rest of the specification or other intrinsic evidence.

However, the cases cited by defendant also look to the intrinsic record in support of their conclusion that in those cases, some of the steps did need to be construed in order. Here, we see *Laurel Fairchild*, *CyDex Pharms., Inc.*, and *Mantech Environmental Corp.;* each look to the intrinsic record and determine that the records supported the narrowing view that the claims must be performed in the order written as they were determined there.

In the only cases where the claim language did not look to the intrinsic record specifically in the case law, this is because the completion of the prior step was required in order to begin the next step. In other words, there was some sort of logic, you had to finish step A before you could

ever get to step B.

And that's not the case here, for at least steps (i) and (ii).  You do not always have to add the amlodipine besylate in step (i), before you can add the sodium benzoate in step (ii).

The *Globespanvirata* case determined that even when there's some language in the claim that suggests that there may be an order implicated, the court should be look to the other intrinsic evidence to determine whether or not it's required.

So this is part of claim 1 from the patent that we looked at in *Globespanvirata*, and this is the relevant sections here (a) and (b) the Court was looking at, whether or not these needed to be performed in the order in which these two steps were recited in the claims.

And here we see step (b), it says, calculating the bit and energy allocation tables that are based on the sorted subcarrier-indexed estimates, that are set up here in step (a).  We see similar language in steps (i) and (ii) of the disputed term here, which requires adding sodium benzoate to the amlodipine besylate solution that is mentioned in step (i).

Amneal contends that this language provides an antecedent basis in step (ii), which means that step (ii) must always be performed before step (i).  Nevertheless in the

*Globespanvirata* case, and that is Civil Action No. 03-2854 in the District of New Jersey, the court determined that this was not plain language when you look at the rest of the claims that required the claim -- the steps here to be performed in that particular order.  And it would not set an absolute requirement that step (b) always has to occur after step (a).

In fact, the court looked beyond this language in the claim and said it was based on the sorting the subcarrier-index, and determined that nothing in the specification required such a narrow construction that the steps must always be performed in this order

Similarly here, in the specification of the '453 patent, example 2 in fact performs step (iii) prior to step (ii).  Here we see that the amlodipine besylate, and that's in step (i), was added to the container, it was added to the tank as they call it; and then sonication was initiated.

Now, in the context --

THE COURT:  Can I interrupt for a second?  What page are you on in the patent?

MS. HANSON:  This is in column 69, begins column 69, line 66.

THE COURT:  Okay.  Go ahead.

MS. HANSON:  So the amlodipine besylate from step (i) was added to the tank, and then sonication was initiated. And the specification of this patent also explains that

sonication is another word that they are using for the ultrasonic agitation.  So those two are equivalent within the terms of this patent.

So first they did step (i), and then they did step (iii), they turned on the ultrasonic agitation, and then sodium benzoate after that was added to the claim.  So that was step (ii).

THE COURT:  But they started with step (i).

MS. HANSON:  Yes, they did in this case.

THE COURT:  Right, okay.  For them we're talking about (ii) and (iii) and whether that is required.

MS. HANSON:  Yes.

THE COURT:  In order.

MS. HANSON:  In this particular example, your Honor.

THE COURT:  Right.

MS. HANSON:  So we believe the intrinsic evidence supports Azurity's contention that the claims do not need to be strictly performed in the order in which they are recited in the claim.

Additionally, this is another part of the specification, this is in column 2 starting at line 30, your Honor, and here the specification suggests that the first mixture can be subjected to mixing, before --

THE COURT:  I'm sorry; I'm trying to find where you are.

MS. HANSON:  It's written on the bottom of the slides if that's easier as well, your Honor.  So this is column 2, beginning at line 30.

THE COURT:  Yes.

MS. HANSON:  So here the specification suggests that the first mixture, and that is the combination of the amlodipine besylate and the sodium benzoate, can be subjected to mixing before, during or after the ultrasonic agitation. Which we believe further supports Azurity's position that the actions need not always be performed in the precise order in which they are listed in the claim.

THE COURT:  Again, referring to step (iii) happening --

MS. HANSON:  Well, we believe this language can be indicative of the -- yes, step (iii) coming before step (ii) or step (i); in other words, both have to be in at some point in time in order to obtain the first mixture as the claim defines it.

THE COURT:  Um-hmm.

MS. HANSON:  But we believe that the ultrasonic agitation can begin before those are added to the tank.

THE COURT:  Say that again?  Because what I'm trying to get to is (ii) and (iii) to me --

MS. HANSON:  Yes.

THE COURT:  -- could happen in various ways.  But

step (i), I want to make sure I'm clear about that, the first mixture; so you're reading first mixture here as essentially when you look back to the claim --

MS. HANSON:  As the combination -- I'm sorry; as the combination of what is added in step (i) and step (ii), those two ingredients is the first mixture.

THE COURT:  Okay.  Go ahead.

MS. HANSON:  Good?

THE COURT:  Um-hmm.

MS. HANSON:  And if your Honor does look to the extrinsic evidence, Dr. Little agrees.  Dr. Little noted that nothing in the specification restricts the actions of claim 1 to the order in which they are recited, and did not find any suggestion in the specification that the order here is critical to the claimed result.

In other words, if you're looking back to the *Altiris* test, the specification does not explicitly or implicitly require that the action be performed in the order listed in the claim.

Now, furthermore examiners when they issue a patent, issue a notice of allowance describing what they find novel and nonobvious and should be allowed to issue as a patent in these claims.  Here, this examiner describes why she has found these claims to be novel and not obvious in the allowable subject matter.  In this case the examiner did not cite to the

order of the steps as being the novel or critical piece of this invention.

In fact, in the notice of allowance the examiner noted that what the prior art did not teach here was particles of a certain median diameter comprising that amlodipine besylate, where the amlodipine besylate is produced in situ by mixing the amlodipine besylate, the sodium benzoate and the other additives found in this patent and the other claims.

The examiner here did not focus on the order of the steps, and novelty is not found in the three steps that we are discussing today or in the order in which they are performed. Therefore, neither the patentee nor the examiner felt that the order of these steps was the critical point of this invention.

Now, again if your Honor looks to the extrinsic evidence, this is also Dr. Little's understanding of the claims in the prosecution history.  In his review of the prosecution history, as he called it the file history, which again is intrinsic evidence here, he did not find any arguments to avoid the prior art that implicated the order of the steps in claim 1.

And he noted that a person of skill in the art reading this file history, would support an understanding that the order of the actions in claim 1, is not restricted to the specific sequence in which they appear in the claim.

THE COURT:  But plaintiff's position is that a court

does not need to rely on this extrinsic evidence --

MS. HANSON: If the Court finds that it can be -- if the meaning of the claim can be determined from the intrinsic record alone, then yes, we believe that the Court need not rely on the extrinsic evidence provided.

Therefore, while some of the language in claim 1 may be suggestive of an order, the claim language does not explicitly require that the steps always be performed in the order in which they are written. Furthermore, both the prosecution history and the specification provide additional support for performing these claims in alternative orders.

So, if you ignore the rest of the intrinsic record and only look at the article "the", which Amneal urges you to do, one can be misled into believing that the claims require a particular order of the claim. Of the steps in the claim; apologies.

But that the Federal Circuit has put forth this two-part test that requires construing the claim in light of the specification. Which as we pointed out the intrinsic record shows that the precise order of steps is not required.

Do you have any additional questions, your Honor?

THE COURT: You still have a few minutes left, so I might use that time. I want to make sure I'm understanding it completely. And can you walk me through again -- I as I read it thought you have to start with step (i).

*United States District Court*
*Trenton, New Jersey*

MS. HANSON:  Okay.

THE COURT:  Do you disagree with that?

MS. HANSON:  I believe we do disagree with that. Let me run back to the language of the claim.

THE COURT:  Walk me through that argument again.

MS. HANSON:  Absolutely, your Honor.  So, here we are looking at the language of the claim all together, and the blue block is a disputed term.  And when you're looking at the little (i), providing an aqueous mixture comprising amlodipine besylate; and then you look at (ii), adding sodium benzoate to the aqueous mixture to form the first mixture.

What we read this as what we believe a person of skill in the art would read this, is really combining these two to obtain that first mixture.  While we agree that there is some suggestion in this language with what Amneal is calling this antecedent basis of the aqueous mixture, we think that if you look in terms of the specification there's no strict requirement, or in the prosecution history, that these need to always be added in this order.

THE COURT:  But you would have to start with the aqueous -- am I pronouncing that correctly?

MS. HANSON:  I think either actually works.

THE COURT:  You have to start with an aqueous mixture; no?

MS. HANSON:  I don't believe you need to, I believe

the sodium benzoate could be added to the tank, and then you can add an aqueous mixture which has the amlodipine besylate dissolved in it.  That basically is salt that you dissolving in the water.

THE COURT:  Right.

MS. HANSON:  And then you're adding the sodium benzoate which I understand is also a solid.

THE COURT:  Okay.  Where in the patent do you believe you start with a sodium benzoate and not necessarily this aqueous mixture?

MS. HANSON:  So, I believe that -- so there's two issues here, your Honor.  First being if you look at the prosecution history, there is actually a section where they discussed -- and this is in response to the non-final office action, and this response is actually dated June 25th, 2019.

And here the patentee, through his attorney, stated that a skilled artisan would appreciate that you could actually -- the addition of the sequence of the salt forming agents, and that's those two agents, the amlodipine besylate and the sodium benzoate, could be -- the sequence could be adjusted here.  And so we believe that this supports our position that you could add the sodium benzoate first.

There's nothing explicitly in the specification that says that this sodium benzoate could be added first.  However, you know, in order to be adequately described we don't believe --

there's no requirement that a patentee have every iteration of what he has in mind as described in the specification.

THE COURT: Okay. Because here it looks like they're talking about the sonication process, the little (iii); right?

MS. HANSON: I think they're talking about both. A skilled artisan would appreciate there's different parameters that would adjust and control the particle size. They're talking about the duration of the sonication, the frequency of the sonication, and the addition of sequence of the salt-forming agents. And that in addition to the salt-forming agents those salt-forming agents are the amlodipine besylate and the sodium benzoate.

THE COURT: Okay, I understand your argument.

MS. HANSON: Thank you, your Honor.

THE COURT: Thank you.

MR. MADDOX: Your Honor, I have a slight logistical issue here.

THE COURT: Okay.

MR. MADDOX: We didn't receive and I don't think she has printouts of --

MS. HANSON: No, I don't have any, I'm sorry.

MR. MADDOX: I would like to refer to a couple of slides she put up. If we took a brief recess, I believe my tech person can work with her so I can be able to do that in

my presentation.

THE COURT:  Oh, okay.  You want to compare the two.

MR. MADDOX:  Right.

THE COURT:  How much time would you need do you think?

MR. MADDOX:  I'm sorry; Mr. Pressman (ph) is our tech person.

THE COURT:  Good morning.

TECH PERSON:  Like five, 10 minutes.

THE COURT:  That's fine.  We can take five minutes, 10 minutes.

MR. MADDOX:  Thank you.

(Brief recess.)

THE COURT:  Ready?

MR. MADDOX:  Yes, Judge.

May it please the Court, my name is Steven Maddox and I represent the defendant, Amneal Pharmaceuticals.  On the particular claim construction at issue here, Order of Steps, the claim construction begins and ends with the claim language, as a matter of Federal Circuit law.  This is because the ordinary meaning of the claim language we've got here, as a matter of logic and grammar, doesn't suggest, it requires that the steps be performed in the order.

As a matter of claim construction law under *Mformation* and *Altiris*, which are basically statements of the

same rule, no additional showing is needed.  Nevertheless, the Court may be assured that the specification supports this construction in the same way, and using the same language as the claims.

And so, frankly we don't think you need anything other than the intrinsic evidence of the claim language, period; but you can also look to the intrinsic evidence of the specification.  But we differ from plaintiff's mainly in what the *Altiris* test is.  And by the way, *Altiris* isn't magic, there's several Federal Circuit cases that recite the same law that's been around for a couple decades.

In the specification we cited in our briefs and we'll show you today, that the inventors identified and described more than a hundred embodiments of the amlodipine suspensions and processes they invented.  And each and every one of these embodiments that they identified and described, the steps must be done in the sequence written based on the exact same language that's in the claim.

So, turning to claim construction in general, we appreciate that you don't come from a patent background, but there's nothing exotic here.  Claim construction is basically the same thing as statutory construction, it's basically the same thing as contract interpretation.  There are rules construction to that apply to the document, and because you're a court, that's what courts are meant to do, it's a question

of law and subject to de novo review.

We suggest here that there are three cases that are most correctly on point and frankly controlling here. They are the *Phillips AWH* case, which you will find is the alpha and omega of claim construction principles and has pages and pages of them, but it explains why intrinsic evidence rules and extrinsic evidence is not to be trusted. *Mformation* and *Altiris* which we'll show you in a moment, are simply two different statements of the same law.

But first, we have the question of where do you start. You start with the ordinary meaning of the claim language to a person of ordinary skill in the art. That's because we want to make sure we give due regard for some terms that may have special meaning to a pharmaceutical scientist, or to an engineer, that type of thing. But if the term doesn't have special meaning in the field, then you just go with the ordinary and common usage.

And so as they pointed out in *Phillips*, in these cases lay judges and lay lawyers -- frankly I don't have scientific background -- can readily determine what the meaning is, because it's just applying widely accepted meanings of commonly understood words.

And that's what we have here. There's no dispute, there's no contention by anyone, even Dr. Little, that providing the aqueous mixture comprising amlodipine besylate

means something else to a pharmaceutical scientist.  It's the ordinary meaning of these words.  Same with Roman Numeral ii; there's no term of art here or jargon.  Same with iii.  So we are in the *Phillips* land of just applying the ordinary meaning.

Now, while I have the claim here, I'd like to point out this word "comprising", which you'll see in these other places, this is just long-standing patent speak for including, but not limited to.

THE COURT:  Well, it's specifically defined in the patent; right?

MR. MADDOX:  Yes -- well, what it means is you've got to have these three things, but you can have other stuff in your process too.  You can have other steps before i, you can have other steps between these steps, and you can have other steps after these steps.  You can't get out from under this patent by having more steps.  So that's what we're dealing with.  And this is the black letter law.

Now, you heard mention of *Altiris* and you'll see in the briefs mention of *Mformation*.  These are not warring cases.  They both do the same thing.  *Mformation* -- and they both frankly apply these rules that came from even older cases.  *Mformation* expresses it this way:  A claim requires the steps to be done in order when the claim language, as a matter of logic or grammar, requires that the steps be

performed in the order written.  Good as far as it goes.  Or, a claim requires an order of steps when the specification directly or indirectly requires an order of steps.  It is one or the other; either one will get you there under *Mformation* Tech.

This rule is stated differently, but it's the same rule in *Altiris*.  First, we look to the claim language to determine if, as a matter of logic or grammar, they must be performed in the order written; okay, we do that.  If not, that is, if the claim language doesn't compel that order, then we look to the rest of the specification to determine if it does.

It is the same thing as *Mformation*.  Either the claim language or the specification can get you there.  You don't need both.

Now, the plaintiffs wanted to talk in this case primarily in terms of the *Altiris* test, and that's fine, it's the same as *Mformation*, that's fine.  But what we've found here is that they have rewritten the *Altiris* test.  They have taken out "if not."

And can we go to their presentation, slide 4, please?

Here you can see their articulation of *Altiris*: Look to the claim language to determine if; and then no "if not", just straight to look to the rest of the specification.

Can we go back to -- I'm sorry?

THE COURT:  Can I interrupt you for a second?

MR. MADDOX:  Sure.

THE COURT:  But as I read it, what language in the claim do you believe requires this specific order?

MR. MADDOX:  Absolutely.  I made the point about them leaving out part of the test, I'm moving right on to that.

THE COURT:  Okay.

MR. MADDOX:  By the way this is Federal Circuit cases, which are the governing cases here, applying the rule of *Altiris* and *Mformation*.  And you can see how it applies. For instance, in *E-Pass*:  Where the step of transferring a data set to a card, as a matter of logic must occur before the step of storing said transferred data set on the card.  It really is common sense.

Same here in *Mantech*:  Step of introducing acid in ferrous iron must occur before the step of performing a reaction in the presence of said acidic conditions and said ferrous iron.  You see words like "said" and "the" to refer back to the antecedent.  Same here in *Loral*, same in *Mformation*.

So let's get to our -- well, we'll come back to this.  Let's get to our language.  Step (i):  Providing an aqueous mixture.  Some say aqueous, some say [aqueous].  Okay,

that's what you do, that's pretty clear; what it is.

Then we get to step (ii):  Adding sodium benzoate to the aqueous mixture.  There is no question that the aqueous mixture being referred to here is the aqueous mixture from (i).  You cannot do (ii) unless you've done (i) first.  It's a not a suggestion, it's a fact.  In step (ii), when you do that to the aqueous mixture of step (i), you form a first mixture. And in step (iii), it says:  Subjecting the first mixture. You cannot do (iii) on a first mixture until you get a first mixture formed by step (ii).  You cannot do step (ii) on the aqueous mixture, until you get an aqueous mixture provided in step (i).  This is not mere suggestion.  This is the same kind of logic that you're seeing in these Federal Circuit cases about the claim language.

Now, there was some reference to -- of a district court decision called *Globespan*', and actually there are three are district courts in the briefing.  Two of them come from us, they are 2020 and 2021, recent decisions, one from the District of New Jersey, and one from the District of Delaware. And they are both dealing with the technology and claim language of pharmaceuticals.

THE COURT:  What are the names of those two?

MR. MADDOX:  Sure.  It's *CyDex Pharmaceuticals*, and *Chiesi USA v. MSN*.  They're in our brief, in our opening briefs, and throughout the briefing.

And when you look at *CyDex Pharmaceuticals* -- and the important thing is they're pharmaceutical cases.  When you look at them the claim language in the very similar.  In *CyDex*, step A required formation of an aqueous milieu, is what they call it, a pharmaceutical.  Step B required the aqueous milieu be used to form a purified solution.

It is exactly what I just laid out.  And I especially request the Court to take a careful at *Chiesi* in our briefs, and if you look at the claim language there, it is shockingly similar to the claim language here.  Step A called for the formation of a first solution; step B called for mixing a pH adjusting agent with the first solution to form a second solution; and step C called for removing the solvent from the second solution.  This is right on what you're dealing with here.

The *Globespan*' case didn't have that linkage, it had -- it used the phrase "based on"; and perhaps more importantly, in addition to being almost 20 years old, it came from the computer science and computer processing world.  And the court said well, this based on is merely a suggestion, it's not the linkage that you got in these other cases; and in particular the court said that that wasn't enough in the claim language, because the system they were dealing with had to do with multiprocessing systems they were multiple processors that could be doing different things at different times.

In particular -- I'm sorry; multiple carriers. You will see that the claim there, I can read you a couple of them: Sorting of the carrier index estimates of the transmission quality, and then calculating bit and energy allocation tables -- this is all heavily computer language. And there was a heavily computer solution that the court gave it, which was listen, if we've got multi-carrier structures, this could happen in the different world. It's nothing to do with this case, it's not at all like the claim language at issue here.

Now, we say the claim language requires it; Azurity says the claim language suggests it; Azurity's expert says the claim language requires it. Dr. Little: Do we have any dispute that the plain and ordinary meaning of the claim language here before you get to the specification is that the steps must be sequential; well, I mean that's the way it's written there. Even Azurity's expert knows that this case, if it depends on claim language, it's required.

Now, let me just map out for you where we're at in our application of *Altiris*. And we have included the "if not" conditional, because the Federal Circuit included the "if not" conditional: Does the claim language require sequences as a matter of grammar and logic. Yes, we just reviewed why.

What does "if not" mean in *Altiris*. If not means, if not. The Federal Circuit should be credited with saying

what it means.

Here, the logic of the claim language does establish the requirement, and so you don't then turn to the specification. But you can, because throughout the specification all of the hundreds of -- I'm sorry. More than a hundred embodiments, all of the ones identified by the inventors, have that same language requiring the same.

Now, Azurity; does the claim language require it? Azurity you just heard says no; Dr. Little says yes. What does if not mean; if not means well, either they ignore it, just write it out of the law, or it means regardless. This is a two-step test they say, you have to do both steps otherwise you lose, and that's just not what the Federal Circuit thinks the law is, either in *Mformation* or in *Altiris*.

And so they come up with some of the -- they're just asserting it, but in Dr. Little's expert opinion, he says well look, when you look to the specification, which you do if you ignore if not, there's nothing in there a person of ordinary skill would say, gee it doesn't prove to me that the sequence is critical to the results; and B, I have found an embodiment, never mind what the inventors say the embodiments are, I found one, a secret embodiment, and I'm going to say that's what a person of ordinary skill in the art would look at and say undo all the rest of it, undo the language, undo the hundred plus embodiments, I found a secret embodiment. That's where this

is going.

Now, when we look to the specification as we're going to do now, so many times this language, providing aqueous mixture, adding it to form -- I'm sorry; adding it to the aqueous mixture to form a first mixture, subjecting the first mixture, that appears so many times that I just don't want to put a thousand words on the screen. So I've highlighted them when they appear, that way.

And for instance, this is from the specification -- and you saw with counsel, this is the citation to where it is in the patent, '453 patent, column 3, 15 to 22. These are in our briefs. You can see all of these, it says: Disclosed herein, it's a process for preparing amlodipine besylate suspension; disclosed herein is the suspension comprising of amlodipine besylate particles; disclosed herein is a suspension; and all of them have the step (i) language.

All of them have the step (ii) language: Adding sodium benzoate to the aqueous mixture of step (i). And all of them have the third part: Subjecting the first mixture created in step (ii) to agitation.

And that didn't just happen in those three places, it happened again and again and again. Almost a dozen times. All these cites are in the briefs.

It's the same language, the same language that requires you do have to done step (i) in order to be able to

do step (ii).  It requires you to have done step (ii) in order to be able to do step (iii).

Now, what's happening here is, is a little sort of shift here.  What's important in claim construction is what the inventors claimed.  It's not whether you think it's scientifically the best way, it's document interpretation.  It's a not what someone might come along later and say gee, I wonder if that's really necessary.

Our job is to say what the property is, what the intellectual property is, what the claim is, because competitors will go out there and look at the patents, and they won't have the benefit of a Dr. Little to find the secret embodiment.  They will just have to go by the claim language and the embodiments listed.

Now, it's not just those dozen or so paragraphs. What you see here, here's one of them, this sentence here:  In some embodiment of the suspension comprising -- here it's disclosing the suspension, and now there's an embodiment of it.  So every time there's this paragraph with the language, it is followed by 10, 20 embodiments, each highlight there is saying in another embodiment.  Each one of these paragraphs has 10 or 20 embodiments to it; 10 times 10 is a hundred at least.  The specification could not be more full of requiring sequential conformance.

Here, some of these embodiments actually go straight

to the claim; the sonic agitation at 20 kHz, and the use of sodium benzoate. And this structure with the paragraph, with the language and the embodiments of it following, happens again and again and again, throughout the patent specification.

THE COURT: Can I interrupt and ask a question?

MR. MADDOX: Sure.

THE COURT: The number of embodiments, wouldn't that suggest that because of the large number of them, that there's many ways in which you can get to the final product?

MR. MADDOX: No. What the large number of embodiments suggest is whatever else you can do in the process, you got to have these three steps in order. That's why you're seeing that same language over and over and over again.

The inventors are saying listen, we've got these processes we've come up with, we've got this suspension, always, always, always the process involves these three; not limited to, but includes, comprising, these three steps. And the way we've written these steps, you have to do them in that order.

That frankly is the inventors reinforcing and making sure everyone understood their claim language. That's what they were trying to do; you can't could (ii) without having done (i), you can't do (iii) without having done (ii). Over

and over and over again, so that everyone would get the point.

THE COURT:  But there's certain language in the specification that suggests that it's always not required to -- that adding the sodium -- help me out; sodium benzoate?

MR. MADDOX:  Sure.

THE COURT:  Okay.  That the process of the sonication and adding sodium benzoate, that that is not always necessarily done in a specific order.

MR. MADDOX:  Okay.  We disagree with that.  We've seen the same slide you have, and we've been through Dr. Little's testimony about that.

THE COURT:  But your position is that you don't want the Court to consider Dr. Little.

MR. MADDOX:  No, no, we think -- we think they had no business disputing this to begin with, because the plain language is clear and the specification is clear.

THE COURT:  Can't we keep Dr. Little's certification and put that aside?

MR. MADDOX:  If you don't allow Dr. Little's interpretation of the specification, but just go with what's written in the specification, what the inventors said was their embodiments, that's fine with us.  Frankly it should be done that way.  But when they put in Dr. Little's, we had to deal with it, and we had to explain why that was wrong too.

If you permit just to go ahead a couple slides, I

can -- what they did was they took *Altiris*, took out the "if not"; said wait a minute, wait a minute, this claim construction is all about the specification.  That was legally wrong, that was an error of law, a misstatement of the law; and then they brought in Dr. Little to say, well, there's so many things in the specification, I think there are some embodiments that the inventors forgot, and they do it out of order.  Frankly they do not do it out of order, as we demonstrate in our briefs and I'll be happy to show you.  And Dr. Little of course totally ignored the pages and pages of embodiments that the inventors say are their embodiments.

So, Dr. Little came in and said well, I found secret embodiments, and by the way there's nothing in here that proves to me that this is essential to getting the results.  And that's not what claim construction is.  Claim construction is here's this claim language, what does it mean; how did the inventors claim their invention.  It's also factually unsupportable as we've shown in our briefs and I'll be happy to show you.

Now, Dr. Little says -- and Azurity, because they are merged in their arguments; he basically just repeats theirs and vice versa.  He says look, forget about the claim language, a mere suggestion; forget about what the inventors say their embodiments are, and the language there that requires sequential, forget about that; I, Dr. Little, have

found a secret embodiment, and I, Dr. Little, will use my expert opinion to say that it doesn't use that sequence; and so I think that a person of ordinary skill in the art approaching this patent, we look to the claim language and say nah, we look at the inventors' descriptions of their invention and their embodiments and say nah, we fortuitously also find the secret embodiment that Dr. Little now claims to have found, and have decided that that trumps the claim language, the embodiments, it all must go the other way because of a secret embodiment that allegedly does things out of sequence.

I'd like to actually turn to that alleged embodiment.  Let me -- permit me to just move ahead here --

THE COURT:  From Dr. Little's --

MR. MADDOX:  No, no, the embodiment you're asking about -- I'm sorry; the example you're asking about.  This is where it comes from.  Dr. Little's discovery of two embodiments; he says example 1 and example 2 in the specification.  Forgive me if I'm moving too fast.  Are you there?

THE COURT:  Let me just get there.

MR. MADDOX:  Sure.  Slide 30; this is his declaration --

THE COURT:  I'm looking at the patent.

MR. MADDOX:  Oh, I beg your pardon we can do that.

The patent --

THE COURT:  You're referring to example 2.

MR. MADDOX:  Yes.  He referred to example 1 and 2, they seemed to have dropped example 1, it doesn't have any size, particle size stuff in it.

This is the example section of the patent.  I've highlighted all the times that any of these have been said to have been an embodiment by the inventors, which is to say absolutely none, as compared to the parts where they talk about their embodiments.

If you look at the example section, what it is is a collection of comparative studies, lab studies done.  Example 2, for instance, is:  The effect of polysorbate 80 on the formation of amlodipine besylate in stainless steel containers.  It's not the effect of changing of the steps of the order, it's the effect of this other excipient.

And we'll skip over example 1 because it -- here. It says, what we did was we made some benzoate salt of amlodipine, using various amounts of polysorbate 80.  And then here's the table, here's the different amounts of polysorbate 80 they used in a bunch of batches, and here's the particle size information.

Example 2 if it says anything, tells you about how using this polysorbate 80 which is nowhere mentioned in the claim at all, will affect particle size.

THE COURT:  Right.

MR. MADDOX:  Not how this order of steps affect particle size --

THE COURT:  Right, that issue is not before me.

MR. MADDOX:  Right.

THE COURT:  Right.

MR. MADDOX:  But they're relying on it.

THE COURT:  Well, I think they're relying on the language in example 2, not necessarily what effect polysorbate 80 has.

MR. MADDOX:  May I have the page with the table on it from our brief?

I have this in a table form.

So here is -- but here is Dr. Little's declaration about example 2.  He says look, utilizes -- he says it's an embodiment, that's his secret embodiment theory; inventors didn't say it was an embodiment of anything, just a study.

He says, you start with aqueous mixture with amlodipine besylate, you do some agitation, and then you have more agitation after all the ingredients were added together.

So this gets back to the comprising language of our steps.  Remember I said comprising means including; you can do whatever else you want to do, but you've got to have these three steps.  And the agitation after the addition of sodium benzoate, that's happening; even Dr. Little admits, that's happening for 10 minutes after that addition.

If you want to do more agitation along the way before or after, that's fine, but this is happening, step (iii) is happening.  Agitation after the addition.

THE COURT:  Well, let me just -- before you move on from that --

MR. MADDOX:  Sure.

THE COURT:  As I read in column 70, 15 to 20, as I read it it's saying that the sonication was before the sodium benzoate was added.  No?

MR. MADDOX:  They did some sonication before, and then they did sonication after.

THE COURT:  Right.

MR. MADDOX:  So that's part of the comprising.  You can do any other things in between, but as long as you do some sonication or the sonication we specify after, you've done step (iii).

THE COURT:  Help me walk through how that's not inconsistent with your argument that you have to do (ii) before (ii).  To me it's saying (ii) and (iii) can be molded together, because the standard or the POSA would know that there's going to be some discretion; you're going to have to work on this as you -- it's going to require some thought; right?  You can't do it just this way then this way, because it requires --

MR. MADDOX:  I hear you, and the language is less

than clear, I understand.  I would say look, that is why the inventors did not call this an embodiment of their invention.

THE COURT:  Can you explain that to me?

MR. MADDOX:  Sure.

THE COURT:  When you use the term embodiment --

MR. MADDOX:  If you -- I beg your pardon.

THE COURT:  As you're using that word embodiment.

MR. MADDOX:  Yeah.  Embodiment is something that is within the scope of what you're claiming for your invention.  If you go to the specification generally, has embodiments of the invention, so that if there's any question about whether an invention that isn't just the claimed invention, how many different ways can you be practicing my invention.  And I'm going to give you, I'm going to tell you it's my embodiments here; you can practice it this way, you can practice it that way, you can practice it this way, you can practice it that way and here's an embodiment there's an embodiment, there's an embodiment.  And every patent at the end says I've given you some preferred embodiments, but there are obviously more.

That's what an embodiment is; it's here's how you can practice my invention.  And the inventors said that for about a hundred plus embodiments that are mentioned.

THE COURT:  Because there's multiple ways to get to the end result.

MR. MADDOX:  No, they did that because there's just

that many different ways to practice their invention, but what never changes in those hundred plus ways is the order of these steps.

And you're saying -- or they're saying well, listen, in the part of the patent doesn't deal with embodiments, we found one batch in a comparative analysis about polysorbate 80, in which we think could be construed to say well, maybe we did this in this study before step (iii).

And I'm saying that would very much explain why the inventors did not embrace that as a way to practice their invention. They did not say it was an embodiment. We're suggesting when an inventors goes out of his way to label all the things that are embodiments of his invention or her invention, when the inventor specifically does not do so, it has some meaning.

You can't rely -- basically as you might imagine patent claims have a public notice function; right? Competitors are entitled to look at the patent claim and look at the specification, right, and then adjust their behavior so it's not to infringe.

The meaning of a patent claim has to serve that function. And it can't be or it shouldn't be that a patent claim meaning depends on which expert you ask, to find a secret embodiment that the inventors to all appearances did not feel was an embodiment of their invention. You shouldn't

allow people to convert the studies that the inventors don't say their invention, and say no no, those are really your invention, and a ha, your claim language is now void.  That's not what claim construction is about, and that would be --

THE COURT:  Are you saying that the Court can't rely on the language in the example, because it's not -- it doesn't include the word embodiment?

MR. MADDOX:  I'm saying the Court should give due regard to the fact that in a specification where the inventors identified all their embodiments, before the Court concludes that this example within a polysorbate study is in fact an embodiment too, should give due regard to the fact that the inventors based on the public record didn't think so.  There's a whole bunch of these studies, examples 1 2 3 4 5 6 7 8 9, none of which the inventors claim to be their inventions; none of which the inventors say this is one of the ways you can do my invention.  This is a dump of studies about salt formation in general.

THE COURT:  Is there case law that says the court should rely on embodiments as opposed to the examples provided in a patent?

MR. MADDOX:  There's case law --

THE COURT:  Isn't that kind of what you're saying?

MR. MADDOX:  There's case law that says you should rely on embodiments.  I don't know that's case law saying, and

that means not examples, because examples can be embodiments; the inventors can say here's an example of my invention, here's an embodiment of it in that section.  But these inventors did not.

These inventors merely included a bunch of general studies about salt formation as they were trying to figure out, and you can see it, what things affect particle size.  The claim construction issue here is the way that they claim their invention doesn't require these steps.

And at some level what someone thinks about the wisdom of that, or the necessity of that, takes a way of a back seat to the language, and what the inventors say their inventions were, and how they're practiced.  It won't do to come along later and say well, actually I think your invention is this too, and therefore your claim language should be ignored.

I think I may be out of time; I don't know.  I would love to talk more but --

THE COURT:  I know, I apologize, I took you down a path that I needed to just follow through.  So I don't know if I took you away from your --

MR. MADDOX:  May I speak for a few more minutes and then I'll sit down?

THE COURT:  Yes, I will allow that because I took us down a path that I just want to make sure I understood.

MR. MADDOX:  Sure.

Could you get me to slide 26 please?

This is Dr. Little, and you've heard the same thing in argument; again, it's because Dr. Little's expert testimony is actually legal argument.  He says:  Nowhere in the specification does the patent restrict the actions of claim 1 to the order recited.

What about all those paragraphs, all those embodiments of those paragraphs where it uses the same language as in the claim to restrict the order; it doesn't phase Dr. Little.

Then he says, well, nowhere in the specification does it teach that the order is critical to the result.  Couple things here.  One -- well, mostly, there is no scientific criticality rule of claim construction.  Claim construction is the ordinary meaning of the claim terms to a person of ordinary skill in the art.  Not whether the specification can prove that this is scientifically the key to everything.

Two different inquiries.  One of them has nothing to do with claim construction.  One has to do with a bunch of experts who can sit around and debate what's causing the size particles to happen.  One has to do with the law of patents and the claim they made.

Another variation on this was Dr. Little's focus of

the invention.

And could I have their slide -- well, rather than go through that, you heard counsel say listen, the prosecution history did not focus on the order of steps.  There's no focus requirement, this is document interpretation.  There is no scientific criticality requirements, there's no -- no focus of the discussion, there is what's the language, what does the language require; now, prove infringement.

By the way, you have heard and seen in the briefs, they say well, turns out, let me tell you judge, says Dr. Little, without citing an article or reference or anything; Azurity says, Dr. Little says you get the same product if you switch the orders around.

But that's not what Dr. Little actually said.  Dr. Little actually said, you change the order it could effect the resulting size.  Not that we should be getting into whether the order affects size, because as I said again this is claim construction, interpretation of a document.

But if we are getting into it, let's at least be candid about exactly what this expert said.  Sure it can affect particle size, the particle size that's a part of claim 1, the median size D50.  Then goes on to say well, but there's other ways to get at size; no kidding.  This invention is about how to get at size using the claimed invention.

The fact that someone might be able to effect

particle size by using polysorbate 80 or changing the temperature doesn't matter.  What they're claiming here is the ability to achieve these sizes using the steps they put in, which clearly would depend on each other in order.

And then finally, we do have his opinion on the ultimate issue.  I don't think -- I think it's total improper and I think you shouldn't pay attention to it, but we did have to respond to it.  He said the construction, the proper construction is Azurity's, and he did that based on legal principles of claim construction that Azurity's counsel gave him.

And when you review these as we show you in the brief, there is no reference to the test of *Altiris* or *Mformation*.  It's as if that black letter law never existed. And surprisingly it's just like the "if not" never existed, now the whole case, the whole rule never existed.

And so surprisingly when the good doctor applied this incomplete construction principles, he came out with his opinion which we think is worthless.

Thank you.

THE COURT:  I have one more question.

MR. MADDOX:  Absolutely.

THE COURT:  Do you believe that the Court needs to define what a person of ordinary skill in the art is?  And if so, what is that definition?

MR. MADDOX:  Absolutely.  First of all, I don't think you need to, because this case should be decided on the law of document interpretation.  But if you feel you need to, we have no objection to their definition for the purposes of claim construction.

THE COURT:  Okay, thank you.

MS. HANSON:  May I take just a few more minutes of your time, your Honor?

THE COURT:  Sure.  Only because I gave you a few extra minutes.  It's this to address --

MS. HANSON:  Some of the issues that counsel spoke about with respect to claim construction, responding to some of the stuff he said with respect to Dr. Little's declaration.

MR. MADDOX:  If I may, your Honor?

THE COURT:  Yes.

MR. MADDOX:  You gave me extra time not to respond to stuff that they said, but to basically deal with your intervention.

THE COURT:  Right.  I don't want to get into a back-and-forth debate over --

MR. MADDOX:  Exactly.  And she -- you know --

THE COURT:  Then I give him more time --

MR. MADDOX:  You have the briefs, Judge, they're very extensive.

THE COURT:  Right.  And I don't need to hear anymore

with respect to Dr. Little.

MS. HANSON:  Okay.  I'll defer to your opinion, your Honor.  Thank you.

THE COURT:  Okay, thank you.

I appreciate everyone coming in person.  This was very helpful.  And if I could get a copy of plaintiff's power point, that would be helpful as well.

MS. HANSON:  Will do.

THE COURT:  All right.  Thank you.

(Counsel say thank you.)

(Matter concluded.)

- - -


"I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter."


/S/ Francis J. Gable, C.C.R., C.R.R.     June 14, 2022


_____              _____

Signature of Court Reporter                      Date

**'**

**'039** [1] - 4:19
**'329** [1] - 4:19
**'453** [4] - 4:24, 5:2, 9:12, 28:11
**'998** [1] - 4:19

**/**

**/S** [1] - 45:17

**0**

**03-2854** [1] - 9:1
**08608** [1] - 1:11

**1**

**1** [12] - 8:11, 12:12, 13:20, 13:23, 14:6, 33:17, 34:2, 34:3, 34:16, 39:14, 41:6, 42:22
**10** [7] - 18:9, 18:11, 29:20, 29:22, 35:25
**14** [1] - 45:17
**15** [2] - 28:11, 36:7

**2**

**2** [11] - 9:13, 10:21, 11:3, 33:17, 34:1, 34:2, 34:12, 34:22, 35:8, 35:14, 39:14
**20** [5] - 25:18, 29:20, 29:22, 30:1, 36:7
**2019** [1] - 16:15
**2020** [1] - 24:18
**2021** [1] - 24:18
**2022** [2] - 1:10, 45:17
**21-8717** [1] - 1:6
**21-cv-8717** [1] - 3:3
**22** [1] - 28:11
**25th** [1] - 16:15
**26** [1] - 41:2

**3**

**3** [2] - 28:11, 39:14
**30** [4] - 3:17, 10:21, 11:3, 33:21

**4**

**4** [2] - 22:21, 39:14
**402** [1] - 1:11

**5**

**5** [1] - 39:14

**6**

**6** [1] - 39:14
**66** [1] - 9:21
**69** [2] - 9:20

**7**

**7** [1] - 39:14
**70** [1] - 36:7

**8**

**8** [2] - 1:10, 39:14
**80** [7] - 34:12, 34:18, 34:20, 34:23, 35:9, 38:7, 43:1
**856** [1] - 1:25
**889-4761** [1] - 1:25

**9**

**9** [1] - 39:14

**A**

**a)** [2] - 8:19, 9:6
**ability** [1] - 43:3
**able** [4] - 17:25, 28:25, 29:2, 42:25
**above-entitled** [1] - 45:15
**absolute** [1] - 9:5
**Absolutely** [4] - 15:6, 23:6, 43:22, 44:1
**absolutely** [1] - 34:8
**accepted** [1] - 20:21
**achieve** [1] - 43:3
**acid** [1] - 23:17
**acidic** [1] - 23:19
**Action** [1] - 9:1
**action** [2] - 12:18, 16:15
**actions** [4] - 11:10, 12:12, 13:23, 41:6
**add** [6] - 5:24, 5:25, 8:3, 8:4, 16:2, 16:22
**added** [12] - 6:2, 9:15, 9:24, 10:6, 11:21, 12:5, 15:19, 16:1, 16:24, 35:19, 36:9
**Adding** [2] - 24:2, 28:17
**adding** [10] - 5:8, 5:15, 5:19, 8:20, 15:10, 16:6, 28:4, 31:4, 31:7
**addition** [7] - 16:18, 17:10, 17:11, 25:18, 35:23, 35:25, 36:3
**additional** [3] - 14:10, 14:21, 19:1
**Additionally** [1] - 10:20
**additives** [1] - 13:8
**address** [2] - 4:10, 44:10
**adequately** [1] - 16:25
**adjust** [2] - 17:8, 38:19
**adjusted** [1] - 16:21
**adjusting** [1] - 25:12
**admits** [1] - 35:24
**affect** [4] - 34:24, 35:1, 40:7, 42:21
**affects** [1] - 42:17
**agent** [1] - 25:12
**agents** [5] - 16:19, 17:11, 17:12
**Agitation** [1] - 36:3
**agitation** [12] - 5:8, 6:1, 10:2, 10:5, 11:8, 11:21, 28:20, 30:1, 35:18, 35:19, 35:23, 36:1
**agree** [2] - 4:15, 15:14
**agrees** [1] - 12:11
**ahead** [4] - 9:22, 12:7, 31:25, 33:12
**alleged** [1] - 33:11
**allegedly** [1] - 33:10
**allocation** [2] - 8:17, 26:5
**allow** [4] - 4:12, 31:19, 39:1, 40:24
**allowable** [1] - 12:24
**allowance** [2] - 12:21, 13:3
**allowed** [1] - 12:22
**Almost** [1] - 28:22
**almost** [1] - 25:18
**alone** [2] - 4:15, 14:4
**alpha** [1] - 20:4
**alternative** [1] - 14:11
**Altiris** [17] - 6:18, 12:17, 18:25, 19:9,

20:8, 21:19, 22:7, 22:17, 22:19, 22:23, 23:12, 26:20, 26:24, 27:14, 32:1, 43:13
**amlodipine** [21] - 5:5, 5:24, 8:3, 8:21, 9:14, 9:23, 11:7, 13:5, 13:6, 13:7, 15:9, 16:2, 16:19, 17:12, 19:14, 20:25, 28:13, 28:15, 34:13, 34:18, 35:18
**Amlodipine** [2] - 5:12, 5:13
**Amneal** [8] - 3:2, 3:12, 6:4, 7:8, 8:23, 14:13, 15:15, 18:17
**AMNEAL** [1] - 1:6
**amounts** [2] - 34:18, 34:19
**analysis** [1] - 38:6
**antecedent** [3] - 8:24, 15:16, 23:21
**apologies** [1] - 14:16
**apologize** [2] - 5:11, 40:19
**appear** [3] - 5:23, 13:24, 28:8
**appearances** [2] - 3:4, 38:24
**application** [1] - 26:20
**applied** [1] - 43:17
**applies** [1] - 23:12
**apply** [2] - 19:24, 21:22
**applying** [3] - 20:21, 21:4, 23:11
**appreciate** [4] - 16:17, 17:7, 19:20, 45:5
**approaching** [1] - 33:4
**aqueous** [22] - 15:9, 15:11, 15:16, 15:21, 15:23, 16:2, 16:10, 20:25, 23:25, 24:3, 24:4, 24:7, 24:11, 25:4, 25:5, 28:4, 28:5, 28:18, 35:17
**aqueous]** [1] - 23:25
**argue** [1] - 7:10
**argument** [5] - 15:5, 17:14, 36:18, 41:4, 41:5
**arguments** [2] - 13:19, 32:21
**arises** [1] - 5:17
**Arnie** [1] - 3:5
**ARNOLD** [1] - 2:3
**art** [10] - 13:4, 13:19, 13:21, 15:13, 20:12,

21:3, 27:23, 33:3, 41:17, 43:24
**article** [2] - 14:13, 42:11
**articulation** [1] - 22:23
**artisan** [2] - 16:17, 17:7
**aside** [1] - 31:18
**asserting** [1] - 27:16
**assured** [1] - 19:2
**attention** [1] - 43:7
**attorney** [1] - 16:16
**avoid** [1] - 13:19
**AWH** [1] - 20:4
**AZURITY** [1] - 1:4
**Azurity** [7] - 3:2, 3:6, 26:11, 27:8, 27:9, 32:20, 42:12
**Azurity's** [7] - 5:20, 10:17, 11:9, 26:12, 26:17, 43:9, 43:10

**B**

**back-and-forth** [1] - 44:20
**background** [2] - 19:20, 20:20
**based** [7] - 8:17, 9:8, 19:17, 25:17, 25:20, 39:13, 43:9
**basis** [2] - 8:24, 15:16
**batch** [1] - 38:6
**batches** [1] - 34:20
**beg** [2] - 33:24, 37:6
**begin** [5] - 4:1, 6:2, 7:24, 11:21, 31:15
**beginning** [2] - 3:4, 11:3
**begins** [2] - 9:20, 18:19
**behalf** [1] - 3:11
**behavior** [1] - 38:19
**believes** [1] - 4:14
**benefit** [1] - 29:12
**benzoate** [22] - 5:25, 8:4, 8:20, 10:6, 11:7, 13:7, 15:10, 16:1, 16:7, 16:9, 16:20, 16:22, 16:24, 17:13, 24:2, 28:18, 30:2, 31:4, 31:7, 34:17, 35:24, 36:9
**best** [1] - 29:6
**besylate** [19] - 5:5, 5:24, 8:4, 8:21, 9:14, 9:23, 11:7, 13:6, 13:7, 15:10, 16:2, 16:19, 17:12, 20:25,

28:13, 28:15, 34:13, 35:18
**between** [2] - 21:15, 36:14
**beyond** [1] - 9:7
**bit** [2] - 8:17, 26:4
**black** [2] - 21:18, 43:14
**block** [1] - 15:8
**blue** [2] - 5:17, 15:8
**bottom** [1] - 11:1
**box** [1] - 5:17
**brief** [5] - 7:8, 17:24, 24:24, 35:11, 43:13
**Brief** [1] - 18:13
**briefing** [2] - 24:17, 24:25
**briefs** [11] - 3:18, 19:12, 21:20, 24:25, 25:9, 28:12, 28:23, 32:9, 32:18, 42:9, 44:23
**brought** [1] - 32:5
**bunch** [4] - 34:20, 39:14, 40:5, 41:21
**business** [1] - 31:15
**BY** [4] - 2:3, 2:6, 2:8, 2:11

## C

**C.C.R** [2] - 1:24, 45:17
**C.R.R** [2] - 1:24, 45:17
**calculating** [2] - 8:16, 26:4
**Calmann** [1] - 3:6
**CALMANN** [2] - 2:3, 3:5
**candid** [1] - 42:20
**cannot** [3] - 24:5, 24:9, 24:10
**card** [2] - 23:14, 23:15
**careful** [1] - 25:8
**carrier** [2] - 26:3, 26:7
**carriers** [1] - 26:1
**case** [20] - 6:7, 6:17, 6:18, 7:22, 8:2, 8:6, 9:1, 10:9, 12:25, 20:4, 22:16, 25:16, 26:9, 26:17, 39:19, 39:22, 39:24, 39:25, 43:16, 44:2
**cases** [14] - 6:12, 7:13, 7:15, 7:21, 19:10, 20:2, 20:19, 21:21, 21:23, 23:11, 24:13, 25:2, 25:21
**CASTNER** [1] - 1:14
**causing** [1] - 41:22

**certain** [3] - 5:5, 13:5, 31:2
**certification** [1] - 31:17
**certify** [1] - 45:14
**change** [1] - 42:15
**changes** [1] - 38:2
**changing** [2] - 34:14, 43:1
**Chiesi** [2] - 24:24, 25:8
**Circuit** [9] - 6:11, 14:17, 18:20, 19:10, 23:10, 24:13, 26:21, 26:25, 27:13
**citation** [1] - 28:10
**cite** [1] - 12:25
**cited** [3] - 6:12, 7:13, 19:12
**cites** [1] - 28:23
**citing** [1] - 42:11
**Civil** [1] - 9:1
**CIVIL** [1] - 1:5
**Claim** [3] - 19:21, 32:15, 41:15
**claim** [104] - 4:9, 4:20, 4:24, 5:2, 5:16, 5:20, 5:23, 6:6, 6:8, 6:14, 6:22, 7:7, 7:9, 7:21, 8:7, 8:11, 9:4, 9:8, 10:6, 10:19, 11:11, 11:17, 12:3, 12:12, 12:19, 13:20, 13:23, 13:24, 14:3, 14:6, 14:7, 14:15, 14:18, 15:4, 15:7, 18:18, 18:19, 18:21, 18:24, 19:6, 19:18, 19:19, 20:5, 20:11, 21:6, 21:23, 21:24, 22:2, 22:7, 22:10, 22:14, 22:24, 23:5, 24:14, 24:20, 25:3, 25:9, 25:10, 25:22, 26:2, 26:9, 26:11, 26:12, 26:13, 26:14, 26:18, 26:22, 27:2, 27:8, 29:4, 29:10, 29:13, 30:1, 30:23, 32:2, 32:15, 32:16, 32:17, 32:22, 33:4, 33:8, 34:24, 38:18, 38:21, 38:23, 39:3, 39:4, 39:15, 40:8, 40:15, 41:6, 41:10, 41:15, 41:16, 41:21, 41:24, 42:17, 42:21, 43:10, 44:5, 44:12
**claimed** [4] - 12:15, 29:5, 37:12, 42:24

**claiming** [2] - 37:9, 43:2
**claims** [15] - 4:14, 5:3, 7:19, 8:15, 9:3, 10:17, 12:23, 12:24, 13:8, 13:16, 14:11, 14:14, 19:4, 33:7, 38:17
**CLARKSON** [1] - 1:10
**clear** [5] - 12:1, 24:1, 31:16, 37:1
**clearly** [1] - 43:4
**co** [1] - 3:7
**co-counsel** [1] - 3:7
**colleague** [1] - 3:6
**collection** [1] - 34:11
**column** [6] - 9:20, 10:21, 11:3, 28:11, 36:7
**combination** [3] - 11:6, 12:4, 12:5
**combining** [1] - 15:13
**comfortable** [1] - 4:5
**coming** [2] - 11:15, 45:5
**common** [2] - 20:17, 23:16
**commonly** [1] - 20:22
**comparative** [2] - 34:11, 38:6
**compare** [1] - 18:2
**compared** [1] - 34:8
**compel** [1] - 22:10
**Competitors** [1] - 38:18
**competitors** [1] - 29:11
**completely** [1] - 14:24
**completion** [1] - 7:23
**components** [2] - 5:16, 6:2
**comprising** [10] - 13:5, 15:9, 20:25, 21:7, 28:14, 29:17, 30:19, 35:20, 35:21, 36:13
**computer** [4] - 25:19, 26:5, 26:6
**concluded** [1] - 45:11
**concludes** [1] - 39:10
**conclusion** [1] - 7:14
**conditional** [2] - 26:21, 26:22
**conditions** [1] - 23:19
**conformance** [1] - 29:24
**Conroy** [2] - 3:12
**CONROY** [3] - 2:8, 2:8, 3:11
**consider** [1] - 31:13

**construction** [29] - 4:9, 7:4, 7:7, 9:10, 18:18, 18:19, 18:24, 19:3, 19:19, 19:21, 19:22, 19:24, 20:5, 29:4, 32:3, 32:15, 39:4, 40:8, 41:15, 41:16, 41:21, 42:18, 43:8, 43:9, 43:10, 43:18, 44:5, 44:12
**construed** [3] - 4:14, 7:15, 38:7
**construing** [1] - 14:18
**container** [1] - 9:15
**containers** [1] - 34:14
**contends** [3] - 6:4, 7:9, 8:23
**contention** [3] - 5:20, 10:17, 20:24
**context** [1] - 9:17
**contract** [1] - 19:23
**control** [1] - 17:8
**controlling** [1] - 20:3
**convert** [1] - 39:1
**copy** [2] - 3:18, 45:6
**Corp** [1] - 7:17
**Correct** [1] - 3:20
**correct** [1] - 45:14
**correctly** [2] - 15:21, 20:3
**CORY** [1] - 2:10
**counsel** [7] - 3:1, 3:7, 4:10, 28:10, 42:3, 43:10, 44:11
**Counsel** [3] - 3:3, 5:10, 45:10
**couple** [4] - 17:23, 19:11, 26:2, 31:25
**Couple** [1] - 41:14
**course** [1] - 32:10
**court** [10] - 8:8, 9:2, 9:7, 13:25, 19:25, 24:16, 25:20, 25:22, 26:6, 39:19
**Court** [14] - 4:8, 7:11, 8:13, 14:2, 14:4, 18:16, 19:2, 25:8, 31:13, 39:5, 39:8, 39:10, 43:23, 45:20
**COURT** [86] - 1:1, 1:14, 3:1, 3:10, 3:15, 3:22, 4:1, 4:6, 5:10, 5:12, 5:14, 6:16, 6:20, 9:18, 9:22, 10:8, 10:10, 10:13, 10:15, 10:24, 11:4, 11:12, 11:19, 11:22, 11:25, 12:7, 12:9, 13:25, 14:22, 15:2, 15:5, 15:20, 15:23,

16:5, 16:8, 17:3, 17:14, 17:16, 17:19, 18:2, 18:4, 18:8, 18:10, 18:14, 21:10, 23:2, 23:4, 23:9, 24:22, 30:6, 30:8, 31:2, 31:6, 31:12, 31:17, 33:13, 33:20, 33:23, 34:1, 34:25, 35:3, 35:5, 35:7, 36:4, 36:7, 36:12, 36:17, 37:3, 37:5, 37:7, 37:23, 39:5, 39:19, 39:23, 40:19, 40:24, 43:21, 43:23, 44:6, 44:9, 44:15, 44:19, 44:22, 44:25, 45:4, 45:9
**COURTHOUSE** [1] - 1:10
**courts** [2] - 19:25, 24:17
**created** [1] - 28:20
**credited** [1] - 26:25
**critical** [5] - 12:15, 13:1, 13:13, 27:20, 41:13
**criticality** [2] - 41:15, 42:6
**CyDex** [4] - 7:16, 24:23, 25:1, 25:4

## D

**D50** [1] - 42:22
**data** [2] - 23:14, 23:15
**Date** [1] - 45:20
**dated** [1] - 16:15
**de** [1] - 20:1
**deal** [3] - 31:24, 38:5, 44:17
**dealing** [4] - 21:18, 24:20, 25:15, 25:23
**debate** [2] - 41:22, 44:20
**decades** [1] - 19:11
**decided** [2] - 33:8, 44:2
**decision** [1] - 24:16
**decisions** [1] - 24:18
**declaration** [3] - 33:22, 35:13, 44:13
**default** [1] - 6:7
**defendant** [3] - 3:12, 7:13, 18:17
**DEFENDANT** [3] - 1:7, 2:9, 2:12
**defer** [1] - 45:2
**define** [1] - 43:24

**defined** [1] - 21:10
**defines** [1] - 11:18
**definition** [2] - 43:25, 44:4
**Delaware** [1] - 24:19
**demonstrate** [1] - 32:9
**described** [6] - 5:6, 5:16, 16:25, 17:2, 19:14, 19:16
**describes** [1] - 12:23
**describing** [1] - 12:21
**descriptions** [1] - 33:5
**determine** [8] - 6:22, 7:2, 7:18, 8:9, 20:20, 22:8, 22:11, 22:24
**determined** [5] - 7:20, 8:6, 9:2, 9:9, 14:3
**diameter** [2] - 5:5, 13:5
**differ** [1] - 19:8
**different** [9] - 17:7, 20:9, 25:25, 26:8, 34:19, 37:13, 38:1, 41:20
**differently** [1] - 22:6
**directly** [2] - 7:3, 22:3
**disagree** [3] - 15:2, 15:3, 31:9
**Disclosed** [1] - 28:12
**disclosed** [2] - 28:14, 28:15
**disclosing** [1] - 29:18
**discovery** [1] - 33:16
**discretion** [1] - 36:21
**discussed** [1] - 16:14
**discussing** [1] - 13:11
**discussion** [1] - 42:7
**displayed** [1] - 3:19
**dispositive** [1] - 7:10
**dispute** [4] - 4:9, 5:17, 20:23, 26:14
**disputed** [3] - 4:24, 8:20, 15:8
**disputing** [1] - 31:15
**dissolved** [1] - 16:3
**dissolving** [1] - 16:3
**DISTRICT** [4] - 1:1, 1:1, 1:14, 1:15
**district** [2] - 24:15, 24:17
**District** [3] - 9:2, 24:19
**Docket** [1] - 3:3
**doctor** [1] - 43:17
**document** [5] - 19:24, 29:6, 42:5, 42:18, 44:3
**done** [11] - 19:17, 21:24, 24:5, 28:25, 29:1, 30:25, 31:8, 31:23, 34:11, 36:15

**down** [3] - 40:19, 40:23, 40:25
**dozen** [2] - 28:22, 29:15
**Dr** [34] - 12:11, 13:15, 20:24, 26:13, 27:9, 27:16, 29:12, 31:10, 31:13, 31:17, 31:19, 31:23, 32:5, 32:10, 32:12, 32:20, 32:25, 33:1, 33:7, 33:13, 33:16, 35:13, 35:24, 41:3, 41:4, 41:11, 41:25, 42:10, 42:12, 42:14, 44:13, 45:1
**dropped** [1] - 34:3
**due** [3] - 20:13, 39:8, 39:12
**dump** [1] - 39:17
**duration** [1] - 17:9
**during** [1] - 11:8

**E**

**E-Pass** [1] - 23:13
**easier** [1] - 11:2
**EAST** [1] - 1:11
**EDWARDS** [1] - 2:11
**Edwards** [1] - 3:13
**effect** [6] - 34:12, 34:14, 34:15, 35:8, 42:15, 42:25
**either** [5] - 6:2, 15:22, 22:4, 27:10, 27:14
**Either** [1] - 22:13
**Embodiment** [1] - 37:8
**embodiment** [29] - 27:20, 27:22, 27:25, 29:13, 29:17, 29:18, 29:21, 33:1, 33:7, 33:10, 33:12, 33:14, 34:7, 35:15, 35:16, 37:2, 37:5, 37:7, 37:17, 37:18, 37:20, 38:11, 38:24, 38:25, 39:7, 39:12, 40:3
**embodiments** [33] - 19:14, 19:16, 27:6, 27:21, 27:25, 29:14, 29:20, 29:22, 29:25, 30:3, 30:8, 30:12, 31:22, 32:7, 32:11, 32:13, 32:24, 33:6, 33:9, 33:17, 34:9, 37:10, 37:14, 37:19, 37:22, 38:5, 38:13, 39:10, 39:20, 39:25, 40:1, 41:9

**embrace** [1] - 38:10
**end** [3] - 4:12, 37:18, 37:24
**ends** [1] - 18:19
**energy** [2] - 8:17, 26:4
**engineer** [1] - 20:15
**enter** [1] - 3:3
**entitled** [2] - 38:18, 45:15
**Environmental** [1] - 7:17
**equivalent** [1] - 10:2
**error** [1] - 32:4
**Escanlar** [1] - 3:7
**ESCANLAR** [1] - 2:3
**especially** [1] - 25:8
**ESQUIRE** [6] - 2:3, 2:3, 2:6, 2:8, 2:11, 2:11
**essential** [1] - 32:14
**Essentially** [2] - 5:9, 5:15
**essentially** [1] - 12:2
**establish** [1] - 27:2
**estimates** [2] - 8:18, 26:3
**evidence** [14] - 4:15, 7:1, 7:12, 8:9, 10:16, 12:11, 13:15, 13:18, 14:1, 14:5, 19:6, 19:7, 20:6, 20:7
**exact** [1] - 19:18
**exactly** [3] - 6:5, 25:7, 42:20
**Exactly** [1] - 44:21
**examiner** [5] - 12:23, 12:25, 13:3, 13:9, 13:12
**examiners** [1] - 12:20
**Example** [2] - 34:11, 34:22
**example** [17] - 7:1, 9:13, 10:14, 33:15, 33:17, 34:1, 34:2, 34:3, 34:5, 34:10, 34:16, 35:8, 35:14, 39:6, 39:11, 40:2
**examples** [4] - 39:14, 39:20, 40:1
**excipient** [1] - 34:15
**existed** [3] - 43:14, 43:15, 43:16
**exotic** [1] - 19:21
**expert** [8] - 4:11, 26:12, 26:17, 27:16, 33:2, 38:23, 41:4, 42:20
**experts** [1] - 41:22
**explain** [3] - 31:24, 37:3, 38:9

**explains** [2] - 9:25, 20:6
**explicitly** [4] - 6:10, 12:17, 14:8, 16:23
**expresses** [1] - 21:23
**extensive** [1] - 44:24
**extent** [2] - 4:10, 4:13
**extra** [2] - 44:10, 44:16
**extrinsic** [5] - 12:11, 13:14, 14:1, 14:5, 20:7

**F**

**fact** [8] - 9:7, 9:13, 13:3, 24:6, 39:9, 39:11, 39:12, 42:25
**factually** [1] - 32:17
**Fairchild** [1] - 7:16
**far** [1] - 22:1
**fast** [1] - 33:18
**Federal** [9] - 6:10, 14:17, 18:20, 19:10, 23:10, 24:13, 26:21, 26:25, 27:13
**felt** [1] - 13:12
**ferrous** [2] - 23:18, 23:20
**few** [4] - 14:22, 40:22, 44:7, 44:9
**field** [1] - 20:16
**figure** [1] - 40:6
**file** [2] - 13:17, 13:22
**final** [2] - 16:14, 30:10
**finally** [1] - 43:5
**fine** [5] - 18:10, 22:17, 22:18, 31:22, 36:2
**finish** [1] - 7:25
**firm** [1] - 3:14
**First** [3] - 16:12, 22:7, 44:1
**first** [25] - 5:24, 7:8, 10:4, 10:22, 11:6, 11:17, 12:1, 12:2, 12:6, 15:11, 15:14, 16:22, 16:24, 20:10, 24:5, 24:7, 24:8, 24:9, 25:11, 25:12, 28:5, 28:6, 28:19
**FISHER** [1] - 1:10
**five** [2] - 18:9, 18:10
**focus** [5] - 13:9, 41:25, 42:4, 42:6
**follow** [1] - 40:20
**followed** [1] - 29:20
**following** [1] - 30:3
**FOR** [4] - 2:4, 2:6, 2:9, 2:12
**foregoing** [1] - 45:14

**forget** [3] - 32:22, 32:23, 32:25
**Forgive** [1] - 33:18
**forgot** [1] - 32:7
**form** [7] - 15:11, 24:7, 25:6, 25:12, 28:4, 28:5, 35:12
**formation** [5] - 25:4, 25:11, 34:13, 39:17, 40:6
**formed** [1] - 24:10
**forming** [4] - 16:18, 17:11, 17:12
**formulation** [2] - 4:20, 4:22
**forth** [2] - 14:17, 44:20
**fortuitously** [1] - 33:6
**four** [1] - 4:17
**FRANCIS** [1] - 1:24
**Francis** [1] - 45:17
**frankly** [5] - 19:5, 20:3, 20:19, 21:22, 30:22
**Frankly** [2] - 31:22, 32:8
**frequency** [1] - 17:9
**full** [1] - 29:23
**function** [2] - 38:17, 38:22
**furthermore** [1] - 12:20
**Furthermore** [1] - 14:9

**G**

**Gable** [1] - 45:17
**GABLE** [1] - 1:24
**GC** [1] - 1:6
**gee** [2] - 27:19, 29:7
**general** [4] - 6:8, 19:19, 39:18, 40:5
**generally** [1] - 37:10
**GEORGETTE** [1] - 1:14
**given** [1] - 37:18
**Globespan'** [2] - 24:16, 25:16
**Globespanvirata** [3] - 8:6, 8:12, 9:1
**GOODRICH** [1] - 2:5
**governing** [1] - 23:11
**grammar** [5] - 6:23, 18:22, 21:25, 22:8, 26:23
**great** [1] - 3:25

| H | I | | J | |
|---|---|---|---|---|

**H**

hand [1] - 6:4
Hanson [1] - 3:8
HANSON [40] - 2:6, 3:8, 3:21, 3:25, 4:2, 4:7, 5:11, 5:13, 5:15, 6:18, 6:21, 9:20, 9:23, 10:9, 10:12, 10:14, 10:16, 11:1, 11:5, 11:14, 11:20, 11:24, 12:4, 12:8, 12:10, 14:2, 15:1, 15:3, 15:6, 15:22, 15:25, 16:6, 16:11, 17:6, 17:15, 17:22, 44:7, 44:11, 45:2, 45:8
happy [2] - 32:9, 32:18
HARGREAVES [1] - 2:10
hear [2] - 36:25, 44:25
heard [5] - 21:19, 27:9, 41:3, 42:3, 42:9
HEARING [1] - 1:19
hearing [1] - 3:16
heavily [2] - 26:5, 26:6
help [1] - 31:4
Help [1] - 36:17
helpful [2] - 45:6, 45:7
herein [3] - 28:13, 28:14, 28:15
herself [1] - 3:7
highlight [1] - 29:20
highlighted [2] - 28:8, 34:6
highlights [1] - 7:8
history [10] - 7:2, 7:3, 13:16, 13:17, 13:22, 14:10, 15:18, 16:13, 42:4
hmm [2] - 11:19, 12:9
Honor [21] - 3:5, 3:11, 3:21, 4:2, 4:3, 4:12, 4:14, 6:12, 10:14, 10:22, 11:2, 12:10, 13:14, 14:21, 15:6, 16:12, 17:15, 17:17, 44:8, 44:14, 45:3
HONORABLE [1] - 1:14
hosting [1] - 4:3
hundred [6] - 19:14, 27:6, 27:24, 29:22, 37:22, 38:2
hundreds [1] - 27:5

**I**

i) [7] - 8:22, 8:25, 10:8, 14:25, 24:5, 24:12, 28:18
identified [4] - 19:13, 19:16, 27:6, 39:10
identify [1] - 3:7
ignore [3] - 14:12, 27:10, 27:18
ignored [2] - 32:10, 40:16
ii [19] - 8:19, 8:24, 10:11, 11:15, 11:23, 12:5, 15:10, 21:2, 24:2, 24:5, 24:6, 24:10, 28:17, 28:20, 29:1, 30:24, 36:18, 36:19
ii) [8] - 8:3, 8:5, 9:14, 10:7, 24:10, 29:1, 30:25, 36:19
iii [13] - 9:13, 10:5, 10:11, 11:12, 11:15, 11:23, 17:5, 21:3, 24:8, 24:9, 30:25, 36:3, 36:19
iii) [3] - 29:2, 36:16, 38:8
imagine [1] - 38:16
implicated [2] - 8:8, 13:19
implicitly [3] - 6:10, 7:3, 12:18
important [2] - 25:2, 29:4
importantly [1] - 25:18
improper [1] - 43:6
Inc [2] - 3:2, 7:16
INC [1] - 1:4
include [1] - 39:7
included [3] - 26:20, 26:21, 40:5
includes [2] - 5:7, 30:19
including [2] - 21:8, 35:21
incomplete [1] - 43:18
inconsistent [1] - 36:18
index [2] - 9:9, 26:3
indexed [1] - 8:18
indicative [1] - 11:15
indirectly [1] - 22:3
information [1] - 34:21
infringe [1] - 38:20
infringement [1] - 42:8

ingredients [2] - 12:6, 35:19
initiated [2] - 9:16, 9:24
inquiries [1] - 41:20
instance [4] - 5:23, 23:13, 28:9, 34:12
intellectual [1] - 29:10
interested [1] - 4:8
interpretation [6] - 19:23, 29:6, 31:20, 42:5, 42:18, 44:3
interrupt [3] - 9:18, 23:2, 30:6
intervention [1] - 44:18
intrinsic [15] - 4:15, 7:1, 7:12, 7:14, 7:17, 7:22, 8:9, 10:16, 13:18, 14:3, 14:12, 14:19, 19:6, 19:7, 20:6
introducing [1] - 23:17
invented [1] - 19:15
invention [25] - 13:2, 13:13, 32:17, 33:5, 37:2, 37:9, 37:11, 37:12, 37:13, 37:21, 38:1, 38:11, 38:13, 38:14, 38:25, 39:2, 39:3, 39:17, 40:2, 40:9, 40:14, 42:1, 42:23, 42:24
inventions [2] - 39:15, 40:13
inventor [1] - 38:14
inventors [27] - 19:13, 27:7, 27:21, 29:5, 30:16, 30:22, 31:21, 32:7, 32:11, 32:17, 32:23, 34:7, 35:15, 37:2, 37:21, 38:10, 38:12, 38:24, 39:1, 39:9, 39:13, 39:15, 39:16, 40:2, 40:4, 40:5, 40:12
inventors' [1] - 33:5
involves [1] - 30:18
iron [2] - 23:18, 23:20
issue [9] - 12:20, 12:21, 12:22, 17:18, 18:18, 26:10, 35:3, 40:8, 43:6
issues [2] - 16:12, 44:11
iteration [1] - 17:1
itself [2] - 6:15, 7:11

**J**

jargon [1] - 21:3
JEREMY [1] - 2:11
Jeremy [1] - 3:13
Jersey [2] - 9:2, 24:19
JERSEY [3] - 1:1, 1:11, 1:15
job [1] - 29:9
judge [1] - 42:10
Judge [2] - 18:15, 44:23
JUDGE [1] - 1:14
judges [1] - 20:19
JUNE [1] - 1:10
June [2] - 16:15, 45:17

**K**

Katherine [1] - 3:7
KATHERINE [1] - 2:3
keep [1] - 31:17
key [1] - 41:18
kHz [1] - 30:1
kidding [1] - 42:23
kind [2] - 24:12, 39:23
knows [1] - 26:17
KRISTINA [1] - 2:6
Kristina [1] - 3:8

**L**

lab [1] - 34:11
label [1] - 38:12
laid [1] - 25:7
land [1] - 21:4
language [73] - 6:14, 6:22, 7:9, 7:21, 8:7, 8:19, 8:23, 9:3, 9:7, 11:14, 14:6, 14:7, 15:4, 15:7, 15:15, 18:20, 18:21, 19:3, 19:6, 19:18, 20:12, 21:24, 22:7, 22:10, 22:14, 22:24, 23:4, 23:24, 24:14, 24:21, 25:3, 25:9, 25:10, 25:23, 26:5, 26:9, 26:11, 26:12, 26:13, 26:15, 26:18, 26:22, 27:2, 27:7, 27:8, 27:24, 28:3, 28:16, 28:17, 28:24, 29:13, 29:19, 30:3, 30:14, 30:23, 31:2, 31:16, 32:16, 32:23, 32:24, 33:4, 33:8, 35:8, 35:20, 36:25, 39:3,

39:6, 40:12, 40:15, 41:10, 42:7, 42:8
large [2] - 30:9, 30:11
Last [1] - 3:15
Laurel [1] - 7:16
law [19] - 6:7, 7:22, 18:20, 18:24, 19:10, 20:1, 20:9, 21:18, 27:11, 27:14, 32:4, 39:19, 39:22, 39:24, 39:25, 41:23, 43:14, 44:3
lawyers [1] - 20:19
lay [2] - 20:19
least [3] - 8:2, 29:23, 42:19
leaving [1] - 23:7
left [3] - 3:6, 4:18, 14:22
legal [2] - 41:5, 43:9
legally [1] - 32:3
less [1] - 36:25
letter [2] - 21:18, 43:14
level [1] - 40:10
light [1] - 14:18
limited [3] - 6:8, 21:9, 30:19
line [3] - 9:21, 10:21, 11:3
linkage [2] - 25:16, 25:21
listed [3] - 11:11, 12:19, 29:14
listen [5] - 3:23, 26:7, 30:16, 38:4, 42:3
litigation [1] - 4:18
Little's [12] - 13:15, 27:16, 31:11, 31:17, 31:19, 31:23, 33:13, 33:16, 35:13, 41:4, 41:25, 44:13
LLC [4] - 1:6, 2:2, 2:8, 3:3
LLP [1] - 2:10
logic [9] - 6:22, 7:25, 18:22, 21:25, 22:8, 23:14, 24:13, 26:23, 27:2
logistical [1] - 17:17
long-standing [1] - 21:8
look [32] - 7:11, 7:13, 7:17, 7:22, 8:8, 9:3, 12:3, 12:10, 14:13, 15:10, 15:17, 16:12, 19:7, 22:7, 22:11, 22:25, 25:1, 25:3, 25:9, 27:17, 27:23, 28:2, 29:11, 32:22,

33:4, 33:5, 34:10, 35:14, 37:1, 38:18
**Look** [1] - 22:24
**looked** [2] - 8:12, 9:7
**looking** [5] - 8:13, 12:16, 15:7, 15:8, 33:23
**looks** [5] - 6:14, 6:21, 6:25, 13:14, 17:3
**Loral** [1] - 23:21
**lose** [1] - 27:13
**love** [1] - 40:18

## M

**MADDOX** [47] - 2:11, 3:13, 17:17, 17:20, 17:23, 18:3, 18:6, 18:12, 18:15, 21:12, 23:3, 23:6, 23:10, 24:23, 30:7, 30:11, 31:5, 31:9, 31:14, 31:19, 33:14, 33:21, 33:24, 34:2, 35:1, 35:4, 35:6, 35:10, 36:6, 36:10, 36:13, 36:25, 37:4, 37:6, 37:8, 37:25, 39:8, 39:22, 39:24, 40:22, 41:1, 43:22, 44:1, 44:14, 44:16, 44:21, 44:23
**Maddox** [2] - 3:13, 18:16
**magic** [1] - 19:9
**Mantech** [2] - 7:17, 23:17
**map** [1] - 26:19
**Markman** [1] - 3:16
**MARKMAN** [1] - 1:19
**mask** [1] - 4:5
**matter** [11] - 6:22, 12:25, 18:20, 18:22, 18:24, 21:25, 22:8, 23:14, 26:23, 43:2, 45:15
**Matter** [1] - 45:11
**mean** [4] - 26:16, 26:24, 27:10, 32:16
**meaning** [13] - 14:3, 18:21, 20:11, 20:14, 20:16, 20:21, 21:2, 21:5, 26:14, 38:15, 38:21, 38:23, 41:16
**meanings** [1] - 20:22
**means** [9] - 8:24, 21:1, 21:12, 26:24, 27:1, 27:10, 27:11, 35:21, 40:1

**meant** [1] - 19:25
**median** [3] - 5:5, 13:5, 42:22
**mention** [2] - 21:19, 21:20
**mentioned** [3] - 8:21, 34:23, 37:22
**mere** [2] - 24:12, 32:23
**merely** [2] - 25:20, 40:5
**merged** [1] - 32:21
**methods** [1] - 4:21
**Mformation** [12] - 18:25, 20:7, 21:20, 21:21, 21:23, 22:4, 22:13, 22:18, 23:12, 23:22, 27:14, 43:14
**might** [4] - 14:23, 29:7, 38:16, 42:25
**milieu** [2] - 25:4, 25:6
**mind** [2] - 17:2, 27:21
**minute** [2] - 32:2
**minutes** [9] - 3:17, 14:22, 18:9, 18:10, 18:11, 35:25, 40:22, 44:7, 44:10
**misled** [1] - 14:14
**misstatement** [1] - 32:4
**mixing** [5] - 5:16, 10:23, 11:8, 13:7, 25:12
**mixture** [34] - 6:3, 10:23, 11:6, 11:17, 12:2, 12:6, 15:9, 15:11, 15:14, 15:16, 15:24, 16:2, 16:10, 20:25, 23:25, 24:3, 24:4, 24:7, 24:8, 24:9, 24:10, 24:11, 28:4, 28:5, 28:6, 28:18, 28:19, 35:17
**molded** [1] - 36:19
**moment** [1] - 20:8
**moot** [1] - 4:16
**morning** [7] - 3:1, 3:5, 3:9, 3:10, 3:11, 4:3, 18:8
**most** [2] - 4:8, 20:3
**mostly** [1] - 41:14
**motion** [2] - 4:11, 4:15
**move** [2] - 33:12, 36:4
**moving** [2] - 23:7, 33:18
**MS** [40] - 3:8, 3:11, 3:21, 3:25, 4:2, 4:7, 5:11, 5:13, 5:15, 6:18, 6:21, 9:20, 9:23, 10:9, 10:12, 10:14, 10:16, 11:1,

11:5, 11:14, 11:20, 11:24, 12:4, 12:8, 12:10, 14:2, 15:1, 15:3, 15:6, 15:22, 15:25, 16:6, 16:11, 17:6, 17:15, 17:22, 44:7, 44:11, 45:2, 45:8
**MSN** [1] - 24:24
**multi** [1] - 26:7
**multi-carrier** [1] - 26:7
**multiple** [3] - 25:24, 26:1, 37:23
**multiprocessing** [1] - 25:24
**must** [11] - 6:5, 6:23, 7:19, 8:24, 9:11, 19:17, 22:8, 23:14, 23:18, 26:16, 33:9

## N

**nah** [2] - 33:5, 33:6
**name** [1] - 18:16
**names** [1] - 24:22
**narrow** [2] - 7:4, 9:10
**narrowing** [2] - 7:7, 7:18
**necessarily** [3] - 16:9, 31:8, 35:8
**necessary** [1] - 29:8
**necessity** [1] - 40:11
**need** [15] - 5:22, 7:11, 7:15, 10:17, 11:10, 14:1, 14:4, 15:19, 15:25, 18:4, 19:5, 22:15, 44:2, 44:3, 44:25
**needed** [3] - 8:14, 19:1, 40:20
**needs** [1] - 43:23
**never** [5] - 27:21, 38:2, 43:14, 43:15, 43:16
**Nevertheless** [2] - 8:25, 19:1
**NEW** [3] - 1:1, 1:11, 1:15
**New** [2] - 9:2, 24:19
**next** [1] - 7:24
**NO** [1] - 1:5
**non** [1] - 16:14
**non-final** [1] - 16:14
**none** [3] - 34:8, 39:15
**nonobvious** [1] - 12:22
**note** [1] - 4:13
**noted** [3] - 12:11, 13:4, 13:21
**nothing** [8] - 9:9,

12:12, 16:23, 19:21, 26:8, 27:18, 32:13, 41:20
**notice** [3] - 12:21, 13:3, 38:17
**novel** [3] - 12:21, 12:24, 13:1
**novelty** [1] - 13:10
**novo** [1] - 20:1
**Nowhere** [1] - 41:5
**nowhere** [2] - 34:23, 41:12
**number** [4] - 6:12, 30:8, 30:9, 30:11
**Numeral** [1] - 21:2

## O

**objection** [1] - 44:4
**obtain** [2] - 11:17, 15:14
**obvious** [1] - 12:24
**obviously** [1] - 37:19
**occur** [3] - 9:6, 23:14, 23:18
**OF** [2] - 1:1, 1:15
**office** [1] - 16:14
**OFFICIAL** [1] - 1:24
**old** [1] - 25:18
**older** [1] - 21:22
**omega** [1] - 20:5
**One** [6] - 6:14, 6:21, 41:14, 41:20, 41:21, 41:23
**one** [17] - 3:18, 4:23, 5:2, 5:21, 6:19, 14:14, 19:16, 22:3, 22:4, 24:18, 24:19, 27:22, 29:16, 29:21, 38:6, 39:16, 43:21
**ones** [1] - 27:6
**opening** [1] - 24:24
**opinion** [5] - 27:16, 33:2, 43:5, 43:19, 45:2
**opposed** [1] - 39:20
**opposing** [1] - 4:10
**Order** [1] - 18:18
**order** [58] - 5:18, 5:22, 6:5, 6:9, 6:23, 7:6, 7:9, 7:16, 7:19, 7:24, 8:8, 8:14, 9:5, 9:11, 10:13, 10:18, 11:10, 11:17, 12:13, 12:14, 12:18, 13:1, 13:9, 13:11, 13:13, 13:19, 13:23, 14:7, 14:9, 14:15, 14:20, 15:19, 16:25, 18:23, 21:24,

22:1, 22:2, 22:3, 22:9, 22:10, 23:5, 28:25, 29:1, 30:13, 30:21, 31:8, 32:8, 34:15, 35:1, 38:2, 41:7, 41:10, 41:13, 42:4, 42:15, 42:17, 43:4
**orders** [2] - 14:11, 42:13
**ordinary** [13] - 18:21, 20:11, 20:12, 20:17, 21:2, 21:4, 26:14, 27:18, 27:23, 33:3, 41:16, 41:17, 43:24
**orient** [1] - 4:17
**otherwise** [1] - 27:12

## P

**page** [2] - 9:18, 35:10
**pages** [4] - 20:5, 20:6, 32:10
**paragraph** [2] - 29:19, 30:2
**paragraphs** [4] - 29:15, 29:21, 41:8, 41:9
**parameters** [1] - 17:7
**pardon** [2] - 33:24, 37:6
**part** [12] - 6:11, 6:14, 6:21, 6:25, 8:11, 10:20, 14:18, 23:7, 28:19, 36:13, 38:5, 42:21
**particle** [9] - 17:8, 34:4, 34:20, 34:24, 35:2, 40:7, 42:21, 43:1
**particles** [4] - 5:4, 13:4, 28:15, 41:23
**particular** [6] - 9:5, 10:14, 14:15, 18:18, 25:22, 26:1
**parties** [2] - 4:23, 6:12
**parts** [1] - 34:8
**Pass** [1] - 23:13
**patent** [33] - 4:24, 5:2, 5:3, 5:6, 8:11, 9:13, 9:19, 9:25, 10:3, 12:20, 12:22, 13:8, 16:8, 19:20, 21:8, 21:11, 21:17, 28:11, 30:4, 33:4, 33:23, 33:25, 34:5, 37:18, 38:5, 38:17, 38:18, 38:21, 38:22, 39:21, 41:6

**patentee** [3] - 13:12, 16:16, 17:1
**patents** [6] - 4:18, 4:19, 4:20, 5:1, 29:11, 41:23
**patents-in-suit** [2] - 4:18, 5:1
**path** [2] - 40:20, 40:25
**pay** [1] - 43:7
**pending** [1] - 4:11
**people** [1] - 39:1
**performance** [1] - 6:8
**performed** [17] - 5:22, 6:5, 6:23, 7:6, 7:19, 8:14, 8:25, 9:4, 9:11, 10:18, 11:10, 12:18, 13:11, 14:8, 18:23, 22:1, 22:9
**performing** [3] - 5:21, 14:11, 23:18
**performs** [1] - 9:13
**perhaps** [1] - 25:17
**period** [1] - 19:7
**permit** [2] - 31:25, 33:12
**person** [11] - 13:21, 15:12, 17:25, 18:7, 20:12, 27:18, 27:23, 33:3, 41:17, 43:24, 45:5
**PERSON** [1] - 18:9
**ph** [2] - 18:6, 25:12
**pharmaceutical** [7] - 4:20, 4:21, 5:4, 20:14, 21:1, 25:2, 25:5
**Pharmaceuticals** [5] - 3:2, 18:17, 24:23, 25:1
**PHARMACEUTICAL S** [2] - 1:4, 1:6
**pharmaceuticals** [1] - 24:21
**Pharms** [1] - 7:16
**phase** [1] - 41:11
**Phillips** [3] - 20:4, 20:18, 21:4
**phrase** [1] - 25:17
**piece** [1] - 13:1
**places** [2] - 21:8, 28:21
**plain** [3] - 9:3, 26:14, 31:15
**plaintiff** [2] - 3:4, 3:6
**PLAINTIFF** [3] - 1:4, 2:4, 2:6
**plaintiff's** [3] - 13:25, 19:8, 45:6
**plaintiffs** [2] - 4:1, 22:16

**plus** [3] - 27:24, 37:22, 38:2
**point** [8] - 3:18, 11:16, 13:13, 20:3, 21:6, 23:6, 31:1, 45:7
**pointed** [2] - 14:19, 20:18
**polysorbate** [8] - 34:12, 34:18, 34:19, 34:23, 35:8, 38:6, 39:11, 43:1
**POSA** [1] - 36:20
**position** [4] - 11:9, 13:25, 16:22, 31:12
**power** [2] - 3:18, 45:6
**practice** [7] - 37:15, 37:16, 37:21, 38:1, 38:10
**practiced** [1] - 40:13
**practicing** [1] - 37:13
**precise** [2] - 11:10, 14:20
**preferred** [1] - 37:19
**preparing** [1] - 28:13
**presence** [1] - 23:19
**presentation** [3] - 3:17, 18:1, 22:21
**presentations** [1] - 3:19
**Pressman** [1] - 18:6
**pretty** [1] - 24:1
**previous** [1] - 5:18
**primarily** [1] - 22:17
**principles** [3] - 20:5, 43:10, 43:18
**printouts** [1] - 17:21
**proceedings** [1] - 45:15
**process** [8] - 5:3, 5:6, 17:4, 21:14, 28:13, 30:13, 30:18, 31:6
**processes** [2] - 19:15, 30:17
**processing** [1] - 25:19
**processors** [1] - 25:24
**PROCOPIO** [1] - 2:10
**Procopio** [1] - 3:14
**produced** [1] - 13:6
**product** [3] - 5:3, 30:10, 42:12
**product-by-process** [1] - 5:3
**pronouncing** [1] - 15:21
**proper** [1] - 43:8
**property** [2] - 29:9, 29:10
**prosecution** [8] - 7:2, 7:3, 13:16, 13:17, 14:10, 15:18, 16:13,

42:3
**prove** [3] - 27:19, 41:18, 42:8
**proves** [1] - 32:14
**provide** [1] - 14:10
**provided** [3] - 14:5, 24:11, 39:20
**provides** [1] - 8:23
**providing** [5] - 5:7, 5:19, 15:9, 20:25, 28:3
**Providing** [1] - 23:24
**public** [2] - 38:17, 39:13
**purified** [1] - 25:6
**purposes** [1] - 44:4
**put** [6] - 14:17, 17:24, 28:7, 31:18, 31:23, 43:3

## Q

**quality** [1] - 26:4
**questions** [2] - 3:24, 14:21

## R

**rather** [1] - 42:2
**reaction** [1] - 23:19
**read** [8] - 3:17, 14:24, 15:12, 15:13, 23:4, 26:2, 36:7, 36:8
**readily** [1] - 20:20
**reading** [2] - 12:2, 13:22
**Ready** [1] - 18:14
**really** [4] - 15:13, 23:16, 29:8, 39:2
**Rebekah** [1] - 3:12
**REBEKAH** [1] - 2:8
**receive** [1] - 17:20
**recent** [1] - 24:18
**recess** [2] - 17:24, 18:13
**recite** [1] - 19:10
**recited** [5] - 6:9, 8:15, 10:18, 12:13, 41:7
**record** [9] - 3:4, 7:14, 7:18, 7:22, 14:4, 14:12, 14:20, 39:13, 45:15
**records** [1] - 7:18
**refer** [2] - 17:23, 23:20
**reference** [3] - 24:15, 42:11, 43:13
**referred** [2] - 24:4, 34:2

**referring** [4] - 6:16, 6:18, 11:12, 34:1
**regard** [3] - 20:13, 39:9, 39:12
**regarding** [2] - 4:9, 5:18
**regardless** [1] - 27:11
**reinforcing** [1] - 30:22
**related** [1] - 4:20
**relevant** [1] - 8:12
**rely** [6] - 14:1, 14:5, 38:16, 39:5, 39:20, 39:25
**relying** [2] - 35:6, 35:7
**Remember** [1] - 35:21
**removing** [2] - 4:5, 25:13
**repeats** [1] - 32:21
**report** [1] - 4:11
**Reporter** [1] - 45:20
**REPORTER** [1] - 1:24
**represent** [1] - 18:17
**request** [1] - 25:8
**require** [10] - 5:21, 7:5, 12:18, 14:8, 14:14, 26:22, 27:8, 36:22, 40:9, 42:8
**required** [10] - 7:23, 8:10, 9:4, 9:10, 10:11, 14:20, 25:4, 25:5, 26:18, 31:3
**requirement** [5] - 9:6, 15:18, 17:1, 27:3, 42:5
**requirements** [1] - 42:6
**requires** [16] - 6:10, 7:4, 8:20, 14:18, 18:22, 21:23, 21:25, 22:2, 22:3, 23:5, 26:11, 26:13, 28:25, 29:1, 32:25, 36:24
**requiring** [2] - 27:7, 29:23
**respect** [3] - 44:12, 44:13, 45:1
**respond** [3] - 4:12, 43:8, 44:16
**responding** [1] - 44:12
**response** [2] - 16:14, 16:15
**rest** [7] - 6:25, 7:11, 9:3, 14:12, 22:11, 22:25, 27:24
**restrict** [2] - 41:6, 41:10
**restricted** [1] - 13:23
**restricts** [1] - 12:12
**result** [3] - 12:15,

37:24, 41:13
**resulting** [1] - 42:16
**results** [2] - 27:20, 32:14
**review** [3] - 13:16, 20:1, 43:12
**reviewed** [1] - 26:23
**rewritten** [1] - 22:19
**Roman** [1] - 21:2
**ROSATI** [1] - 2:5
**rule** [7] - 6:8, 19:1, 22:6, 22:7, 23:11, 41:15, 43:16
**rules** [3] - 19:23, 20:6, 21:22
**run** [1] - 15:4
**running** [1] - 3:22

## S

**SAIBER** [1] - 2:2
**salt** [8] - 16:3, 16:18, 17:11, 17:12, 34:17, 39:17, 40:6
**salt-forming** [3] - 17:11, 17:12
**SAVITCH** [1] - 2:10
**saw** [2] - 6:13, 28:10
**scheduled** [1] - 3:15
**science** [1] - 25:19
**scientific** [3] - 20:20, 41:15, 42:6
**scientifically** [2] - 29:6, 41:18
**scientist** [2] - 20:14, 21:1
**scope** [1] - 37:9
**screen** [2] - 3:20, 28:7
**seat** [1] - 40:12
**second** [6] - 5:25, 6:1, 9:18, 23:2, 25:13, 25:14
**secret** [9] - 27:22, 27:25, 29:12, 32:12, 33:1, 33:7, 33:10, 35:15, 38:24
**section** [4] - 16:13, 34:5, 34:10, 40:3
**sections** [1] - 8:13
**see** [16] - 4:18, 5:3, 5:17, 7:16, 8:16, 8:19, 9:14, 21:7, 21:19, 22:23, 23:12, 23:20, 26:2, 28:12, 29:16, 40:7
**seeing** [2] - 24:13, 30:14
**sense** [1] - 23:16
**sentence** [1] - 29:16

**sequence** [8] - 13:24, 16:18, 16:20, 17:10, 19:17, 27:19, 33:2, 33:10
**sequences** [1] - 26:22
**sequential** [3] - 26:16, 29:24, 32:25
**serve** [1] - 38:21
**set** [6] - 6:11, 7:5, 8:18, 9:5, 23:14, 23:15
**several** [1] - 19:10
**shift** [1] - 29:4
**shockingly** [1] - 25:10
**show** [5] - 19:13, 20:8, 32:9, 32:19, 43:12
**showing** [1] - 19:1
**shown** [3] - 5:7, 6:19, 32:18
**shows** [1] - 14:20
**side** [1] - 3:16
**Signature** [1] - 45:20
**similar** [3] - 8:19, 25:3, 25:10
**Similarly** [1] - 9:12
**simply** [1] - 20:8
**sit** [2] - 40:23, 41:22
**situ** [1] - 13:6
**size** [16] - 17:8, 34:4, 34:21, 34:24, 35:2, 40:7, 41:22, 42:16, 42:17, 42:21, 42:22, 42:23, 42:24, 43:1
**sizes** [1] - 43:3
**skill** [8] - 13:21, 15:13, 20:12, 27:19, 27:23, 33:3, 41:17, 43:24
**skilled** [2] - 16:17, 17:7
**skip** [1] - 34:16
**Slide** [1] - 33:21
**slide** [6] - 5:18, 6:19, 22:21, 31:10, 41:2, 42:2
**slides** [3] - 11:2, 17:24, 31:25
**slight** [1] - 17:17
**slow** [1] - 5:10
**sodium** [22] - 5:25, 8:4, 8:20, 10:6, 11:7, 13:7, 15:10, 16:1, 16:6, 16:9, 16:20, 16:22, 16:24, 17:13, 24:2, 28:18, 30:2, 31:4, 31:7, 35:23, 36:8
**solely** [1] - 4:23
**solid** [1] - 16:7
**solution** [7] - 8:21, 25:6, 25:11, 25:12,

25:13, 25:14, 26:6
**solvent** [1] - 25:13
**someone** [3] - 29:7, 40:10, 42:25
**sonic** [1] - 30:1
**sonication** [12] - 9:16, 9:24, 10:1, 17:4, 17:9, 17:10, 31:7, 36:8, 36:10, 36:11, 36:15
**SONSINI** [1] - 2:5
**Sonsini** [1] - 3:8
**sorry** [10] - 6:16, 10:24, 12:4, 17:22, 18:6, 23:1, 26:1, 27:5, 28:4, 33:15
**sort** [2] - 7:25, 29:3
**sorted** [1] - 8:17
**Sorting** [1] - 26:3
**sorting** [1] - 9:8
**special** [2] - 20:14, 20:16
**specific** [4] - 6:17, 13:24, 23:5, 31:8
**specifically** [3] - 7:22, 21:10, 38:14
**specification** [45] - 7:1, 7:3, 7:12, 9:10, 9:12, 9:25, 10:21, 10:22, 11:5, 12:12, 12:14, 12:17, 14:10, 14:19, 15:17, 16:23, 17:2, 19:2, 19:8, 19:12, 22:2, 22:11, 22:14, 22:25, 26:15, 27:4, 27:5, 27:17, 28:2, 28:9, 29:23, 30:5, 31:3, 31:16, 31:20, 31:21, 32:3, 32:6, 33:18, 37:10, 38:19, 39:9, 41:6, 41:12, 41:18
**specify** [1] - 36:15
**staff** [1] - 4:4
**stainless** [1] - 34:13
**standard** [1] - 36:20
**standing** [1] - 21:8
**start** [7] - 14:25, 15:20, 15:23, 16:9, 20:11, 35:17
**started** [1] - 10:8
**starting** [1] - 10:21
**STATE** [1] - 1:11
**statements** [2] - 18:25, 20:9
**STATES** [1] - 1:1
**statutory** [1] - 19:22
**steel** [1] - 34:13
**step** [61] - 5:7, 5:8, 5:19, 6:1, 6:4, 7:8,

7:23, 7:24, 7:25, 8:1, 8:4, 8:5, 8:16, 8:18, 8:21, 8:24, 8:25, 9:6, 9:13, 9:15, 9:23, 10:4, 10:7, 10:8, 11:12, 11:15, 11:16, 12:1, 12:5, 14:25, 23:13, 23:15, 23:18, 24:2, 24:6, 24:7, 24:8, 24:10, 24:12, 25:4, 25:11, 25:13, 27:12, 28:16, 28:17, 28:18, 28:20, 28:25, 29:1, 29:2, 36:2, 36:16, 38:8
**Step** [4] - 23:17, 23:24, 25:5, 25:10
**Steps** [1] - 18:18
**steps** [45] - 5:7, 5:18, 5:21, 6:9, 6:23, 7:6, 7:15, 8:2, 8:15, 8:19, 9:4, 9:11, 13:1, 13:10, 13:13, 13:20, 14:8, 14:15, 14:20, 18:23, 19:17, 21:14, 21:15, 21:16, 21:17, 21:24, 21:25, 22:2, 22:3, 26:16, 27:12, 30:13, 30:19, 30:20, 34:14, 35:1, 35:21, 35:23, 38:3, 40:9, 42:4, 43:3
**STEVEN** [1] - 2:11
**Steven** [2] - 3:13, 18:16
**still** [1] - 14:22
**STONE** [1] - 2:8
**Stone** [1] - 3:12
**storing** [1] - 23:15
**straight** [2] - 22:25, 29:25
**STREET** [1] - 1:11
**strict** [1] - 15:18
**strictly** [1] - 10:18
**strike** [1] - 4:11
**structure** [1] - 30:2
**structures** [1] - 26:7
**studies** [6] - 34:11, 39:1, 39:14, 39:17, 40:6
**study** [3] - 35:16, 38:8, 39:11
**stuff** [4] - 21:13, 34:4, 44:13, 44:17
**subcarrier** [2] - 8:18, 9:9
**subcarrier-index** [1] - 9:9
**subcarrier-indexed** [1] - 8:18

**subject** [2] - 12:25, 20:1
**subjected** [2] - 10:23, 11:7
**subjecting** [4] - 5:8, 5:19, 6:1, 28:5
**Subjecting** [2] - 24:8, 28:19
**suggest** [4] - 18:22, 20:2, 30:9, 30:12
**suggesting** [1] - 38:12
**suggestion** [6] - 12:14, 15:15, 24:6, 24:12, 25:20, 32:23
**suggestive** [1] - 14:7
**suggests** [6] - 7:9, 8:7, 10:22, 11:5, 26:12, 31:3
**suit** [2] - 4:18, 5:1
**support** [3] - 7:14, 13:22, 14:11
**supported** [1] - 7:18
**supports** [4] - 10:17, 11:9, 16:21, 19:2
**surprisingly** [2] - 43:15, 43:17
**suspension** [7] - 5:4, 28:14, 28:16, 29:17, 29:18, 30:17
**suspensions** [1] - 19:15
**switch** [1] - 42:13
**system** [1] - 25:23
**systems** [1] - 25:24

## T

**table** [3] - 34:19, 35:10, 35:12
**tables** [2] - 8:17, 26:5
**tank** [4] - 9:15, 9:24, 11:21, 16:1
**teach** [2] - 13:4, 41:13
**tech** [2] - 17:25, 18:7
**Tech** [1] - 22:5
**TECH** [1] - 18:9
**technology** [1] - 24:20
**temperature** [1] - 43:2
**term** [6] - 4:24, 8:20, 15:8, 20:15, 21:3, 37:5
**terms** [5] - 10:3, 15:17, 20:13, 22:17, 41:16
**test** [12] - 6:11, 6:14, 6:21, 6:25, 12:17, 14:18, 19:9, 22:17, 22:19, 23:7, 27:12, 43:13

**testimony** [2] - 31:11, 41:4
**theirs** [1] - 32:22
**theory** [1] - 35:15
**therefore** [1] - 40:15
**Therefore** [2] - 13:12, 14:6
**thinks** [2] - 27:13, 40:10
**third** [1] - 28:19
**thousand** [1] - 28:7
**three** [13] - 4:18, 4:25, 5:7, 5:18, 13:10, 20:2, 21:13, 24:16, 28:21, 30:13, 30:18, 30:19, 35:23
**throughout** [3] - 24:25, 27:4, 30:4
**today** [8] - 3:16, 3:20, 4:4, 4:9, 4:17, 4:23, 13:11, 19:13
**together** [3] - 15:7, 35:19, 36:20
**took** [6] - 17:24, 32:1, 40:19, 40:21, 40:24
**total** [1] - 43:6
**totally** [1] - 32:10
**transcript** [1] - 45:14
**transferred** [1] - 23:15
**transferring** [1] - 23:13
**transmission** [1] - 26:4
**treatment** [1] - 4:21
**TRENTON** [1] - 1:11
**trumps** [1] - 33:8
**trusted** [1] - 20:7
**trying** [4] - 10:24, 11:22, 30:24, 40:6
**turn** [2] - 27:3, 33:11
**turned** [1] - 10:5
**turning** [1] - 19:19
**turns** [1] - 42:10
**two** [14] - 5:15, 6:11, 8:15, 10:2, 12:6, 14:18, 15:14, 16:11, 16:19, 18:2, 20:8, 24:22, 27:12, 33:16
**Two** [2] - 24:17, 41:20
**two-part** [2] - 6:11, 14:18
**two-step** [1] - 27:12
**type** [1] - 20:15

## U

**U.S** [2] - 1:14, 1:24
**ultimate** [1] - 43:6
**ultrasonic** [5] - 6:1,

10:2, 10:5, 11:8, 11:20
**ultrasound** [1] - 5:8
**Um-hmm** [2] - 11:19, 12:9
**under** [3] - 18:24, 21:16, 22:4
**understood** [3] - 20:22, 30:23, 40:25
**undo** [3] - 27:23, 27:24
**UNITED** [1] - 1:1
**unless** [2] - 6:9, 24:5
**unrelated** [1] - 4:25
**unsupportable** [1] - 32:18
**up** [8] - 3:19, 5:4, 6:11, 7:5, 8:18, 17:24, 27:15, 30:17
**urges** [1] - 14:13
**USA** [1] - 24:24
**usage** [1] - 20:17
**uses** [2] - 4:10, 41:9
**utilizes** [1] - 35:14

## V

**variation** [1] - 41:25
**various** [2] - 11:25, 34:18
**versa** [1] - 32:22
**versus** [1] - 3:2
**vice** [1] - 32:22
**view** [1] - 7:19
**void** [1] - 39:3
**Vs** [1] - 1:5

## W

**wait** [2] - 32:2
**walk** [2] - 14:24, 36:17
**Walk** [1] - 15:5
**warring** [1] - 21:20
**water** [1] - 16:4
**ways** [8] - 11:25, 30:10, 37:13, 37:23, 38:1, 38:2, 39:16, 42:23
**whole** [3] - 39:14, 43:16
**widely** [1] - 20:21
**WILSON** [1] - 2:5
**Wilson** [1] - 3:8
**wisdom** [1] - 40:11
**wonder** [1] - 29:8
**word** [4] - 10:1, 21:7, 37:7, 39:7
**words** [7] - 7:24,

11:16, 12:16, 20:22, 21:2, 23:20, 28:7
**works** [1] - 15:22
**world** [2] - 25:19, 26:8
**worthless** [1] - 43:19
**write** [1] - 27:11
**written** [12] - 6:5, 6:24, 7:6, 7:19, 11:1, 14:9, 19:17, 22:1, 22:9, 26:17, 30:20, 31:21

## Y

**years** [1] - 25:18